ACCEPTED
03-15-00174-CV
5914794
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/2/2015 10:31:39 AM
JEFFREY D. KYLE
CLERK

## No. 03-15-00174-CV

IN THE COURT OF APPEALS

FOR THE THIRD DISTRICT OF TEXAS

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/2/2015 10:31:39 AM
JEFFREY D. KYLE
_____Clerk

LEVI MORIN,

Appellant,

v.

LAW OFFICE OF KLEINHANS GRUBER, PLLC,

Appellee.

From Cause No. D-1-GN-14-003874; 201st Judicial District Court
Travis County, Texas

BRIEF OF APPELLEE, LAW OFFICE OF KLEINHANS GRUBER, PLLC
A/K/A LAW OFFICE OF KG, PLLC

Kimberly G. Kleinhans
State Bar No. 24062755
Keith L. Kleinhans
State Bar No. 24065565
12600 Hill Country Blvd., Ste. R-275
Austin, TX 78738
512.961.8512 (telephone)
512.623.7320 (facsimile)

ATTORNEYS FOR APPELLEE,
LAW OFFICE OF KLEINHANS GRUBER, PLLC

ORAL ARGUMENT NOT REQUESTED

**LEVI MORIN,**
                    **Appellant,**

v.

**LAW OFFICE OF KLEINHANS GRUBER, PLLC,**
                    **Appellee.**

---

## IDENTITY OF PARTIES & COUNSEL

Appellant:                                  Levi Morin

Counsel for Appellant:                      Leif Olson
                                            State Bar No. 24032801
                                            leif@olsonappeals.com
                                            The Olson Firm
                                            4830 Wilson Road, Suite 300
                                            Humble, Texas 77396
                                            281.849.8382

Appellee:                                   Law Office of Kleinhans Gruber, PLLC

Counsel for Appellee:                       Kimberly G. Kleinhans
                                            State Bar No. 24062755
                                            Keith L. Kleinhans
                                            State Bar No. 24065565
                                            Law Office of Kleinhans Gruber, PLLC
                                            12600 Hill Country Blvd., Ste. R-275
                                            Austin, Texas 78738

Identity of Parties……………………………………………………….….....  — 1 —

Table of Contents…………………………………………………………......— 2 —

Index of Authorities………………………………………………….. — 5 —

Abbreviations and Record References……………………………….….…..— 8 —

Summary of Appellee's Brief……………......……………………………..— 9 —

I. Oral Argument Not Requested…………………..………………….....— 11 —

II. Statement of the Case……………………………………………… — 11 —

III. Issues Presented……………………..…………….…..……………..... — 13 —

IV. Standard of Review……………………………………….…—  13 —

V. Statement of Facts……………………………………….……. — 14 —

    a. Representation of Morin……………………………….....  — 14 —

    b. KG's Withdraw and Morin's Retaliation…………………....  — 15 —
        i. Morin's Bar Complaint against KG **and Siegler**
          Dismissed Immediately Without Investigation — 15 —
        ii. In Response, Morin Attacks KG on Yelp…...... — 15 —

    c. KG's Discovery of Morin's Yelp Post………………….....  — 16 —

    d. The Lawsuit………………….…………….……….....…..... — 16 —
        i. No Order to Nonsuit KG Claims………......... — 17 —
        ii. Morin's Discovery Responses Due
          Before Motion to Dismiss Filed…………....... — 17 —
             1st Missed Deadline………………….... — 17—
             2nd Missed Deadline…………………..... — 18 —
             No Ongoing Discovery Discussions...... — 18 —
        iii. Morin Fails to Timely *File* His Motion to Dismiss……—19 —
             3rd Missed Deadline…………………..... — 19 —
        iv. Morin Fails to Timely *Set* His Motion to Dismiss……—19 —

4th Missed Deadline………….…....... — 19 —
5th Missed Deadline………….…....... — 19 —
    v.  No Hearing was Held on February 26, 2015……..……— 21 —
  vi.  Trial Court's Ruling………………….……..……— 22 —

e.  The Appeal………………………………...…….. — 23—
6th Missed Deadline………………..... — 23 —
7th Missed Deadline………………...... — 24 —
8th Missed Deadline………………...... — 24 —

VI.    Summary of Argument: *KG's response to Morin's motion to dismiss was not only supported by clear and specific evidence on each and every element, Morin's motion was also denied on countless other procedural levels due to Morin's habitual inability to meet deadlines*……………………………………….…—24 —

VII.   Argument………...……………………………………. — 26 —

A. Trial Court Specifically Found that KG Established by Clear and Specific Evidence, a Prima Facie Case of Defamation and Business Disparagement…………………………...…. — 27 —
Falsity…………………………………….… — 28 —
Malice……………………………………….. — 29 —
Damages……………………………………... — 30 —

1. Trial Court Specifically Found KG's Exhibits Were Timely and Admissible………………………….…….……..…. — 32 —
  a.  KG's Evidence Timely Filed 19 Days and 3 Days Prior to Motion to Dismiss Setting..... — 33 —
  b.  KG's Affidavits Properly Authenticated……... — 35 —
  c.  Garza Emailed Affidavit Testimony & Waived Formal Service…………………….. — 37 —

2. Trial Court Specifically Found KG's Evidence was Clear and Specific……………………………….…..…. — 39 —
  a.  Falsity Supported by 4 Evidentiary Items…. — 40 —
  b.  Damages…………………………..………... — 41 —
    1.  Noneconomic Damages to Reputation are Presumed…. — 42 —
    2.  Economic Damages to

KG Earning Capacity
and Lost Income………….. — 45 —

c. Malice Supported by Motive and
Intentional Acts……………………………. — 47 —

B. Trial Court Specifically Found Hearing was Untimely…..…. — 51 —

C. Trial Court Specifically Found Morin Exhibits to be
Untimely and No Good Cause Substantiated ………………….. — 53 —

D. Morin's Attorney Fees Contested in Affidavit as Clearly
Unreasonable and Logically Unnecessary………………....…… — 55 —

E. KG Fees Uncontested and KG Entitled to Fees………….....… — 56 —

Conclusion………...………………………………....……………. — 56 —
Certificate of Compliance……………………………...…………….. — 56 —
Certificate of Service……………...……………………………….… — 57 —
Appendix…………………………….………………...…………….. — 58 —

## INDEX OF AUTHORITIES

### Statutes:

Tex. Civ. Prac. & Rem. Code § 27.002

Tex. Civ. Prac. & Rem. Code § 27.003

Tex. Civ. Prac. & Rem. Code § 27.004

Tex. Civ. Prac. & Rem. Code § 27.009

Tex. Civ. Prac. & Rem.Code § 41.001(4)

Tex. Civ. Prac. & Rem.Code § 41.001(12)

Tex. Civ. Prac. & Rem. Code §121.002

Tex. Fin. Code §199.002

### State Cases:

*American Broad. Cos v. Gill*, 6 S.W.3d 19, 29 & n.3 (Tex.App.-San Antonio 1999, pet. Denied)

*Astoria Indus. V. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex.App.-Fort Worth 2007, pet. denied)

*Bell Publ'g Co. v. Garrett Eng'g Co.,* 154 S.W.2d 885, 887 (Tex.Civ.App.-Galveston 1941) aff'd, 170 S.W.2d at 197.

*Bentley v. Bunton,* 94 S.W.3d 561, 580 (Tex. 2003)

*Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex.App. 1990)

*Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.)

*Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983)

*Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 426 (Tex.App.-Waco 1997, writ denied)

*Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (TexApp.-Houston [14th Dist.] 1998, pet. Denied)

*Flamm v. American Association of University Women*, 201 F.3d 144, 151 (2d Cir.2000)

*Gainsco County Mutual Insurance Co. v. Martinez*, 27 S.W.3d 97, 104 (Tex. App.—San Antonio 2000), review granted, (Oct. 12, 2000))

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 373, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (White, J., dissenting)

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)(internal citations omitted).

*Hearst Corp. v. Skeen,* 159 S.W.3d 633 (Tex. 2005)

*Hurlbut v. Gilf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987)

*In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted)

*In re Lipsky*, ___ S.W.3d ___, 6, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015)

*Johnson v. Hospital Corp.*, 95 F.3d 383, 391 (5th Cir.1996)

*Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam)

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)

*Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex.App.-Houston [1st Dist.] 2006, no pet.)

*Musser v. Smith Protective Services, Inc., 723 S.W.2d 653, 655 (Tex.1987)*

*Newsome v. brod*, 89 S.W.3d 732, 735 (Tex. App.-Houston [1st Dist.] 2002, no pet.)

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)

*Phillips v. Brazosport Sav. & Loan Ass'n*, 366 S.W.2d 929 (Tex. 1963).

*Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012) (per curiam)

*Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 922 (Tex.App.-Corpus Christi 1991, writ dism'd w.o.j.)

*TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)

*Rehak Creative Servs v. Witt*, 404 S.W.3d 716, 726 (Tex. App. 2013)

*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 160 (Tex. 2014).

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571(Tex. 1998)

*Wortham Indep. Sch. Dist. v. State*, 244 S.W.2d 838 (Tex. Civ. App.—Waco 1951).

**Rules**

Texas Rule of Civil Procedure 21(b)

Texas Rule of Civil Procedure 176.6(d) and (e)

**Other Authorities**

2 Dan B. Dobbs, *Law of Remedies* § 8.1(4) (2d ed.1993)

Black's Law Dictionary 307, 1616 (10th ed. 2014)

*Restatement (Second) of Torts* § 621 cmt. a (1977)

*Restatement (Second) of Torts* § 905 cmt. i. (1979).

*Restatement (Second) of Torts* § 906 (1979).

Webster's Third New Int'l Dictionary 419, 2187 (2002)

## ABBREVIATIONS AND RECORD REFERENCES

"the Act" refers to Texas Citizen Participation Act

"Appx. ___" followed by a number refers to that certain page in the Appendix Tab following Appellee's Brief.

"A.B. ___" followed by a number refers to a certain page in the Appellate Brief that is the subject of this response.

"C.R. ___" followed by a number refers to that certain page of the Clerk's Record filed in the case.

"Morin" refers to Appellant, Levi Morin.

"KG" refers to Appellee, Law Office of Kleinhans Gruber, PLLC

i. **TRIAL COURT SPECIFICALLY FOUND THAT KG ESTABLISHED BY CLEAR AND SPECIFIC EVIDENCE, A PRIMA FACIE CASE OF DEFAMATION AND BUSINESS DISPARAGEMENT**

   1. Trial Court Specifically Found KG's Exhibits Were Timely and Admissible
      a. KG's Evidence Timely Filed 19 Days and 3 Days Prior to Setting
      b. KG's Affidavits Properly Authenticated
      c. Garza Emailed Affidavit Testimony & Waived Formal Service

   2. Trial Court Specifically Found KG's Evidence was Clear and Specific
      a. Falsity Supported by 4 Evidentiary Items
      b. Damages
         i. Noneconomic Damages to Reputation are Presumed
         ii. Economic Damages to KG Earning Capacity and Lost Income
      c. Malice Supported by Motive and Intentional Acts

ii. **TRIAL COURT SPECIFICALLY FOUND HEARING WAS UNTIMELY**

iii. **TRIAL COURT SPECIFICALLY FOUND MORIN EXHIBITS WERE UNTIMELY AND NO GOOD CAUSE SUBSTANTIATED**

iv. **MORIN'S ATTORNEY FEES CONTESTED IN AFFIDAVIT AS CLEARLY UNREASONABLE AND LOGICALLY UNNECESSARY**

v. **KIMBERLY KLEINHANS' AFFIDAVIT FOR FEES IS UNCONTESTED AND THEY ARE ENTITLED TO FEES**

_____

**IN THE COURT OF APPEALS**
**FOR THE THIRD DISTRICT OF TEXAS**
**AT AUSTIN**

_____

**LEVI MORIN,**
**Appellant,**

**v.**

**LAW OFFICE OF KLEINHANS GRUBER, PLLC,**
**Appellee.**

**From Cause No. D-1-GN-14-003874; 201st Judicial District Court**
**Travis County, Texas**

_____

**BRIEF OF APPELLEE, LAW OFFICE OF KLEINHANS GRUBER, PLLC**

_____

TO THE HONORABLE THIRD COURT OF APPEALS:

Comes now Law Office of Kleinhans Gruber, PLLC (herein after, referred to as "KG"), Appellee, and files this response to Brief of Appellant, Levi Morin (herein after, referred to as, "Morin").

# I.
## STATEMENT ON ORAL ARGUMENT

Oral argument would not benefit the Court.

This appeal is frivolous and not based on law. Morin admits that this appeal in large part is not based on law by stating in his Statement on Oral Argument that the Act doesn't address evidentiary standards and procedure. (A.B. 9). Rather, the issue is not that the Act doesn't address these areas of contention; the issue is that the Act doesn't support Morin's argument. The Act's black letter law provided clear deadlines that Morin repeatedly missed. Likewise, the dispositive issues have been authoritatively decided.

Furthermore, there are no new facts and/or legal arguments that would come to light by oral argument and therefore, there is no reason to cause further delay by scheduling this to be heard for oral argument.

# II.
## STATEMENT OF THE CASE

*Nature of the case.* This is an appeal over the trial court's ruling on Morin's Motion to Dismiss the business disparagement, defamation, and defamation per se claims made by KG against Morin, following Morin's false and damaging online Yelp review made on KG's Yelp page.

*Trial court.* The lawsuit was filed in the 201st Judicial District Court, in Travis County, Texas with the Honorable Judge Steven Yelenoski presiding.

*Proceedings in the trial court.* Following Morin's refusal to remove the false and damaging online Yelp review made on KG's Yelp page, KG filed claims for business disparagement, defamation, and defamation per se. (C.R. 3-11, 195-205). Morin moved to dismiss under the Act, but filed the motion without attaching any exhibits. (C.R. 15-31). After the deadline, Morin untimely refiled the motion with exhibits. (C.R. 32-95). The trial court found that the date of filing

was the date that the filing was made with exhibits and ruled that the filing was untimely. (739).

Morin untimely set the hearing for the Motion to Dismiss. KG filed a Motion to Strike or Deny Morin's Motion to Dismiss on the basis that Morin's filing was untimely, and the setting for the hearing was untimely. (C.R. 120-192). The trial court again agreed and ruled that there was no good cause for the untimeliness of both the Motion to Dismiss and the setting of the hearing. (739).

In response to Morin's unilateral setting around KG's noticed unavailability, KG filed for a continuance and in response the trial court reset the case to March 5, 2015. (C.R. 120-192). Following the Court's ruling that KG's Motion to Strike would be heard on the same day as Morin's Motion to Dismiss, KG filed a Response to Morin's Motion to Dismiss and objected to Morin's evidence. (C.R. 206-467, 468-729).

On date of setting Morin untimely filed objections and more attorney fee testimony. (C.R. 730-734). The trial court overruled the objections to KG affidavits amongst 6 other rulings set forth below that all support denial of the Motion to Dismiss on countless grounds.

*The judgment of the trial court.* Honorable Judge Steven Yelenoski (C.R. 739), (Appx. 1):

- Found no good cause to extend the deadline for Morin to file his Motion to Dismiss.
- Found Morin did not set the hearing on his Motion to Dismiss within 60 days after service of the motion, and did not meet any of the exceptions indicating the hearing can be set later than the 60th day.
- Struck the Exhibits to Morin's Motion to Dismiss as being untimely filed.
- Overruled Morin's objections to the affidavits of Kimberly Kleinhans, Martin Garza, and Michael Siegler.
- Found that KG established by clear and specific evidence, a prima facie case for defamation and business disparagement.
- Found that Morin did not establish each element of an affirmative defense by a preponderance of the evidence.
- Denied Morin's Motion to Dismiss.

# III.
# ISSUES PRESENTED

**ISSUE NO. 1:** The trial court did not err denying a former client's Motion to Dismiss under the Act in finding that the business established by clear and specific evidence, a prima facie case for defamation and business disparagement.

**ISSUE NO. 2:** The trial court did not err denying a former client's Motion to Dismiss under the Act in finding that the former client failed to timely file the Motion to Dismiss in accordance with Act Deadlines and Act Requirements.

**ISSUE NO. 3:** The trial court did not err denying a former client's Motion to Dismiss under the Act in finding that the former client failed to timely hold the hearing on the Motion to Dismiss in accordance with Act Deadlines.

# IV.
# STANDARD OF REVIEW

Appellant has properly addressed the standard of review, but for leaving out a key portion noting that only a minimum amount of evidence is needed to support a prima facie case, as set forth in appellant's reference case, *Serafine v. Blunt. Id.* No. 03-12-00726-CV. _____ S.W.3d__, 2015 WL 2061922 (Tex. App. – Austin May 1, 2015, n.p.h.:

> A prima facie standard generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted); see,

e.g., *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (applying standard in Chapter 27 case and explaining that Legislature's use of "prima facie case" implies imposition of minimal factual burden). "Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue. In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Rehak Creative Servs v. Witt*, 404 S.W.3d 716, 726 (Tex. App. 2013); cf. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam) (explaining that summary-judgment movant's presentation of prima facie evidence of deed's validity established his right to summary judgment unless nonmovants presented evidence raising fact issue related to validity).

## V.
## STATEMENT OF FACTS

### A.    Representation of Levi Morin

KG represented Morin in a family law case from May 1, 2012 to March 15, 2013. (C.R. 196).   On March 15, 2013, Morin called KG and requested that his case be placed on hold and that all work on his case cease.  (C.R. 196).

On May 30, 2013 to June 6, 2014, Morin called and emailed with Kimberly Kleinhans and requested that work be continued on his case.  (C.R. 196). Likewise, representation continued from May 30, 2013 to June 4, 2014.  (C.R. 196). After May 30, 2013, Mr. Morin continued to act in an unprofessional and threatening manner, which left KG with no other choice but to withdraw off his

case. Mr. Morin would write profane and enticing emails to which KG continued to respond in a professional manner.

**B.      KG's Withdraw and Morin's Retaliation**

On June 4, 2014, Kimberly Kleinhans obtained a signed Order of Withdraw from representation and emailed it to Morin.  (C.R. 196, 664). (Appx. 3).  On June 4, 2014, in response to receipt of the Order of Withdraw, Morin emailed Kimberly Kleinhans an email stating, "You're a horrible person, a predator, and I will make sure that's known on as many fronts as I can."  (C.R. 197, 704).  (Appx. 4).

**i.      Morin's Bar Complaint against KG and Siegler Dismissed Immediately Without Investigation**

Approximately between the dates of June 6, 2014 and June 24, 2014, Morin attempted to file a bar complaint against KG's of counsel attorney, Michael Siegler, and managing partner, Kimberly Kleinhans.  (C.R. 197).   On or prior to June 24, 2014, Morin received notice from the State Bar of Texas that his bar complaint was immediately dismissed without investigation whatsoever for lacking basis on its face.  (C.R. 197).

**ii.      In Response, Morin Attacks KG on Yelp**

In response, on or around June 24, 2014, Morin posted a false and damaging review on an internet website called Yelp, which is located at the web address: http://www.yelp.com/biz/law-office-of-kleinhans-gruber-pllc-austin?osq=law+office+of+kg. (C.R. 197).   The review contained several false

— 15 —

statements made by Morin about KG and of-counsel, Michael Siegler, and managing partner, Kimberly Kleinhans, amongst others, including: false allegations regarding professional and/or unethical conduct. (C.R. 197). Specifically, the following false statements were made, "… her legal 'counsel' consists of…sending hung over 'associates' to court dates [Michael Siegler] …"(C.R. 197-198).

### C. KG's Discovery of Morin's Yelp Post

On or around August 20, 2014, Kimberly Kleinhans was notified by a business contact about the negative review of KG posted on Yelp by Morin. (C.R. 198).   Upon review, KG requested Morin to remove the posting, and in response, Morin sent several emails to Kimberly Kleinhans stating, "go fuck yourself," and "biggest piece of shit lawyer I've ever not met," and "wait ten days and see if I'm as big of a pussy as you."  (C.R. 198, 706, 713, 717). (Appx.5)  Morin's December 1, 2014 affidavit, Morin admits that he never attempted to verify the truth or falsity of these statements at time of publishing.  (C.R. 89, 198).   To date, these statements remain posted.

### D. The Lawsuit

At the time of filing the Amended Petition for this lawsuit, KG had suffered general and special damages in the past and will continue to suffer general and special damages in the future as the posting is still active.  (C.R. 198).   KG's

damages include but are not limited to: damage to reputation, loss of reputation, and pecuniary loses (lost sales, and loss of potential clients) of $52,971.25 to $120,000 depending on preferred method of calculation. (C.R. 198). Likewise, this lawsuit was necessary to cease daily ongoing reputational harm and pecuniary harm to KG. (C.R. 468).

On September 24, 2014, KG filed Plaintiff's Original Petition, Request for Equitable Relief & Request for Disclosure. (C.R. 3-11, 120).

### i. No Order to Nonsuit KG's Claims

Although a Notice of Nonsuit was filed by KG in an attempt to avoid having to defend a motion to dismiss due to personal circumstances, KG withdrew the Notice of Nonsuit before an Order of Nonsuit was filed. (C.R. 96-97, 738-739). Although Morin eludes in his brief that KG's claims were nonsuited—this is simply untrue. There is no order of nonsuit, and although it was discussed by the trial court, the trial court refused to make any findings or rulings without further motion by Morin. Furthermore, this issue is not before this Court.

### i. Morin's Discovery Responses Due Before Motion to Dismiss Filed

On September 30, 2014, Morin was personally served with the Original Petition and Request for Disclosure. (C.R. 121, 131-132).

On October 28, 2014, KG served Morin with Requests for Admission, Request for Production, and First Set of Interrogatories. (C.R. 121, 132-154).

1st deadline missed by Morin: On November 19, 2014, Morin's Response to Request for Disclosure was due. Morin failed to respond until February 13, 2015, nearly 3 past the deadline. (C.R. 121).

2nd deadline missed by Morin: On November 27, 2014, Morin's Response to Request for Admissions, Response to Request for Production, and Response to First Set of Interrogatories was due. Morin failed to respond until February 13, 2015, nearly 3 past the deadline. (C.R. 121). When Morin finally responded, he sent over a self-serving subset of documents and responses that primarily consisted of objections which were only beneficial to his case. (C.R. 122, 159-187).

No On-going Discovery Discussions: Although Morin alludes that the reason for all his missed deadlines were because there were ongoing discovery discussions, the evidence supports otherwise. (A.B. 14). (Appx. 6). Despite Morin's requests for limited discovery, KG always clearly responded that full discovery responses would be necessary, or KG would seek a hearing on the matter. (C.R. 122, 155-158). (Appx. 6). Knowingly, Morin set and noticed his motion to dismiss around KG's noticed unavailability simultaneously sending KG and email stating his intent to prevent KG from obtaining discovery, "that [the motion to dismiss setting] will leave you with no time for discovery even if the judge thinks you deserve it. (Appx. 7).

### ii. Morin Fails to Timely *File* His Motion to Dismiss

<u>3rd deadline missed by Morin</u>: On December 1, 2014, the Monday following the 60th day to file a Motion to Dismiss by Morin pursuant to Section 27.003 of the Texas Participation Act (the "Act") ran. (C.R. 121). In accordance with the Act, Morin is limited, "not later than the 60th day after the date of service of the legal action" (Date of Service: September 30, 2014). (C.R. 121).

December 3, 2014, Morin refiled his Motion to Dismiss, this time, with exhibits and affidavits; therefore, this is the date the District Court considered the Motion to Dismiss to be untimely filed, and likewise, *the trial court found no good cause to extend this deadline beyond December 1, 2015, which was the 60th day from the date of service of the legal action.* (C.R. 739).

### iii. Morin Fails to Timely *Set* His Motion to Dismiss

On December 30, 2014, KG filed a Notice of Address Change and Notice of Unavailability and on January 28, 2015, KG filed an Amended Notice of Unavailability which noticed Morin that KG would be out of the country and unavailable for a setting on February 18, 2015 through February 25, 2015. (C.R. 121).

<u>4th and 5th deadline missed by Morin</u>: On January 30, 2015, the 60th day ran from the date that Morin's Motion to Dismiss would have been timely filed (December 1, 2014). In accordance with Section 27.004 of the Act, "A hearing on

a motion under Section 27.004 must be set not later than the 60th day after the date of service of the motion unless:

> [1] the docket conditions of the court require a later hearing,
> [2] upon a showing of good cause,
> [3] or by agreement of the parties
> … but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003…" (C.R. 121-122).

As required by Section 27.004, there were: [1] no Travis County docket conditions that would require a later hearing, [2] no timely finding of good cause by the court prior to running of the 60-day deadline (January 30, 2015) and [3] no agreement by the parties to extend the 60-day deadline to a 90-day deadline. (C.R. 122).

Likewise, *the trial court found no good cause to extend this deadline beyond January 30, 2015, which was the 60th day from the date Motion to Dismiss would have been timely filed.* (C.R. 739).

Therefore, the trial court found that the 90-day deadline doesn't apply by holding that Morin, "*did not meet any of the exceptions indicating that the hearing can be set later than the 60th day,*" but even if it did, Morin failed to hold the hearing by the 90th day, which would have been February 26, 2015 (C.R. 121-123, 739).

### iv.    No Hearing Was Held on February 26, 2015

On February 17, 2015, the District Court heard KG's Motion for Continuance and the parties reached an agreement with the trial court. The trial court acknowledged that Morin had improperly scheduled the Motion to Dismiss on the jury week, rather than a nonjury week, and likewise, the trial court knew that it couldn't hear Morin's Motion to Dismiss on February 26, 2015 because the trial court had scheduled jury trials the entire day.

There is no written order on the matter because the parties were given the option to proceed with KG's Motion to Strike in the afternoon on February 17, 2015, or have all the pending motions heard on the same day on March 5, 2015. After some discussion, the parties agreed in open court that all motions would be reset to March 5, 2015, and likewise, that KG's presence was not necessary on February 26, 2015 because the case would simply be called by the court and reset. (C.R. 110-111, 120-192).

Morin improperly states that a hearing was held February 26, 2015. (A.B. 15) and states that KG should have objected. KG was not in a position to object, given the nature of the agreement set forth above. Further, KG could not object because KG was not present on February 26, 2015. It is clear by the court reporter's record that no hearing was held and neither party even announced ready or acknowledged they were present. (R.R. 3:1-9).

On March 5, 2015, the trial began and concluded the hearing on: (1) Morin's Motion to Dismiss, (2) KG's Second Amended Motion to Strike or Deny Morin's Motion to Dismiss and (3) the responses and replies to those motions; and (4) the parties objections. (C.R. 739).

Based on Morin's improper allegation that the hearing began on February 26, 2015, Morin improperly concludes that KG's response to the Motion to Dismiss was untimely filed. (A.B. 15). However, it was clearly timely filed on March 2, 2015 and hand-delivered by personal service on Morin. (C.R. 206-467).

Furthermore, consistent with the trial court's ruling that, "finds that Kleinhans Gruber established, by clear and specific evidence, a prima facie case for defamation and business disparagement…" and "overrules Morin's objections to the affidavits of Kimberly Kleinhans, Martin Garza and Michael Siegler," the trial court finds these filings were timely and proper and further supports that the above facts concerning the agreement made between the parties and the trial court (that the motions would not be heard February 26, 2015, but rather, that the motions would be heard March 5, 2015). (C.R. 739).

v.      **Trial Court's Ruling**

The trial court not only denied Morin's motion to dismiss on the basis that it found that KG had established by clear and specific evidence, a prima facie case for defamation and business slander, it also denied Morin's motion on various

other levels—all dealing with Morin's habitual failure to meet deadlines as underlined and set forth above on pages 17-19. (C.R. 739). Further, the trial court also found that Morin did not establish each element of an affirmative defense by preponderance of the evidence. (C.R. 739).

### E. Appeal

It is relevant to mention Morin's continued disregard of the rule of law in the appellate court and his habitual failure to meet deadlines.

6th deadline missed by Morin: As Morin admits, pursuant to Tex. Civ. Prac. & Rem. Code § 27.008(a), the Act deems a motion denied if the deadline passes without a hearing (Appx. 2). As no good cause extension was granted, it is clear that January 30, 2015 was the deadline for the hearing on Morin's Motion to Dismiss and it is undisputed that no hearing occurred on the Motion to Dismiss on or prior to the January 30, 2015 deadline. (C.R. 739). Likewise, the motion is denied by operation of law and a Notice of Appeal must be filed within 20 day unless a proper Motion to Extend time is filed within 15 days after the deadline. The 20th day from January 30, 2015 ran on February 19, 2015, and the additional 15-day deadline to file for an extension ran on March 6, 2015. As Morin further admits that, "if the written order states that there is no good cause for extension, then Morin's right to appeal is lost retroactively." (Appx. 2). The Order clearly states that there was no good cause for extension and therefore, it is abundantly

clear that this Court is without jurisdiction to rule on LEVI MORIN's Motion because it is outside the time allowed to file a motion for extension to file for an appeal.

7th deadline missed by Morin: Morin's brief was due on May 27, 2015. (Appx. 2). Rather than filing for an extension before the deadline ran, Morin waited for the court to expend its resources on June 1, 2015, to notice Morin that the brief was late, before bothering to file a Motion for Extension. (Appx. 2).

8th deadline missed by Morin: After the extension was granted to June 10, 2015, Morin again disregarded the new deadline of June 10, 2015, and failed to file the brief or request for extension by June 10, 2015. (Appx. 2).

## VI.
### SUMMARY OF ARGUMENT

*KG's response to Morin's Motion to Dismiss was not only supported by clear and specific evidence on each and every element, Morin's Motion to Dismiss was also denied on countless other procedural levels due to Morin's habitual inability to meet deadlines.*

Morin's pursuit of the appeal is frivolous as the Motion to Dismiss was denied on various grounds that preclude his argument and are not issues of his appeal, but rather he tries to keep them hidden as sub-points when they are equally as important as the issue concerning clear and specific evidence.

There is no question that Morin habitually missed deadlines necessary to bring a Motion to Dismiss that are clearly established by the Act. In fact, Morin failed to file any exhibits by the filing deadline for the Motion to Dismiss and later failed to set any hearing within 60 days of filing, and still didn't have the case heard within the 90 day deadline.

In the event that this Court looks past all the clearly missed deadlines dictated by the Act, and gets to the only issue on appeal—that KG allegedly did not present a prima facie case of each element of the case by clear and specific evidence, this Court should recognize KG clearly did so.

KG's response was timely filed 3 days prior to the hearing.

KG's affidavits were timely and proper, most importantly; Garza's was drafted by him and notarized by his staff.

KG clearly evidenced damages in their petition and in Kimberly Kleinhans affidavit naming the various resources used to calculate specific numbers.

Morin's legal fees are readily controverted in Kimberly Kleinhans' affidavit as being unreasonable because Morin is being charged $75.00 an hour by Lief Olson and is actually paying $75.00 an hour for the services that are being rendered yet Mr. Olson is requesting that KG pay $275.00 an hour.

KG is entitled to their fees and post-motion fees as sanctions against counsel for Morin for filing this frivolous appeal.

The trial court was correct on each and every of its 7 findings against Morin. The Court should reaffirm the trial court's decision and render judgment awarding KG pre-motion fees and an appropriate sanctions against Morin and/or counsel for Morin.

## VII.
### ARGUMENT

The purpose of a Motion to Dismiss pursuant to the Act is to safeguard the constitutional right to free speech.  It is not intended to deprive litigants of their right to a full hearing on the merits concerning real issues of fact.  In fact, The Act's published purpose is, "…to protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002.

Sites like Yelp give ordinary people the power to write reviews that have a major impact on other people's reputations and livelihoods.  But it also means that they can be held legally responsible if what they write is defamatory.  Yelp will not remove the false and damaging online posting by Morin unless there is an order from the trial court requiring Morin to do so. As such, a lawsuit for defamation and business disparagement was filed against Morin for his false and defamatory statements about KG and the attorneys working for KG.  Not only did the trial court find that KG properly establish a prime facie case for both defamation and

— 26 —

business disparagement claims by clear and specific evidence, the trial court also denied Morin's Motion to Dismiss on various other grounds, all having to do with his habitual failure to meet deadlines.

KG is entitled to denial of Morin's Motion to Dismiss based solely on the missed deadlines, yet the trial court still went beyond just a denial of the motion for procedural issues, to clearly point out 7 findings/rulings for concluding that the Motion to Dismiss should be denied.

## A. TRIAL COURT SPECIFICALLY FOUND THAT KG ESTABLISHED BY CLEAR AND SPECIFIC EVIDENCE, A PRIMA FACIE CASE OF DEFAMATION AND BUSINESS DISPARAGEMENT

It is unexplained why Morin continues to reference discrimination as discrimination has nothing to do with this lawsuit or with this appeal.

This is a case involving defamation, defamation per se, and business disparagement only.

The trial court found that KG clearly met the burden to avoid dismissal of the prima facie case by clear and specific evidence of all elements of both defamation and business disparagement. Although the trial court clearly found that KG had met its burden based on the statement that KG, "sent hung over associates to court dates [Michael Siegler]"—that was not specified by the trial court as being

the only basis for the trial court's findings, it was simply the most convincing to the trial court.

The elements for a claim of defamation are: (1) published a statement (2) that was defamatory concerning the plaintiff (3) of false facts or verifiable opinion (4) while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement, *Hearst Corp. v. Skeen*, 130 S.W.3d 910 (Tex. App. 2004) review granted, judgment rev'd, 159 S.W.3d 633 (Tex. 2005); *Musser v. Smith Protective Services, Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).

While an action for defamation protects the personal reputation of the plaintiff, an action for business disparagement is intended to protect the economic interests of the plaintiff. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex.2003); *Hurlbut v. Gulf Atl. Life Insur. Co.*, 749 S.W.2d 762, 766 (Tex.1987); *Newsom v. Brod.*, 89 S.W.3d 732, 735 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The elements for a claim of business disparagement are: (1) the defendant published false and disparaging information, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes, Inc*, 124 S.W.3d at 170; *Hurlbut*, 749 S.W.2d at 766.

- **Falsity**. To prove an action for defamation and business disparagement, the statement must be false. *Musser v. Smith Protective Services, Inc.*, 723

S.W.2d 653, 655 (Tex.1987)[1]. The statement must therefore expressly or implicitly assert facts that are objectively verifiable. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990); *Bentley v. Bunton,* 94 S.W.3d 561, 580 (Tex. 2003) . In *Milkvich*, the U.S. Supreme Court said the First Amendment *does not* mandate an inquiry into whether a statement is opinion or fact because when the speaker states the facts on which they base their opinion, and those facts used to base their opinion are either incorrect or incomplete, or their assessment of those facts is erroneous, the statement may still imply a false assertion of fact. *Id.*, 497 U.S. at 18[2]. The decision in *Bentley* overrules earlier decisions that held that all assertions of opinion are protected under Article 1, Section 8, of the Texas constitution. See *Bentley,* 94 S.W.3d at 580-1 (overruling Associated Press v. Cook, 17 S.W.3d 477, 454 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *American Broad. Cos v. Gill*, 6 S.W.3d 19, 29 & n.3 (Tex.App.-San Antonio 1999, pet. Denied); *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (TexApp.-Houston [14th Dist.] 1998, pet. Denied); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 426 (Tex.App.-Waco 1997, writ denied). In summary, opinion is *not* exempt

---

[1] *Musser*, 723 S.W.2d at 655. (A written statement calling Musser a strong and successful competitor is not false and therefore not defamatory).
[2] *Milkvich* , 497 U.S. at 18 (For example, when a speaker says, 'In my opinion, Jones is a liar,' she implies knowledge of facts that lead to a conclusion that Jones lied).

from causes of action in defamation, however, the opinion must be provable as true or false in order to create liability in the defendant.

- **Malice**. While the defamation claim only requires a lesser showing of negligence, business disparagement requires a showing of malice. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *Bentley* at 561, 586 & n.62. A defendant acts with malice when it (1) knows the statement in question is false, or (2) acts with reckless disregard for whether the statement is true, or (3) acts with ill will, or (4) intends to interfere in the plaintiff's economic interest. *Hurlbut v. Gilf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex.1987). Furthermore, "…care and motive are factors to be considered." *Hearst Corp.*, 130 S.W.3d 910; *Bentley*, at 596.

- **Damages.** The defamation claim damages are presumed when the false statement is about a person in his/her office, profession or occupation. *Morrill v. Cisek*, 226 S.W.3d 545, 549 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 922 (Tex.App.-Corpus Christi 1991, writ dism'd w.o.j.); *Bradbury v. Scott*, 788 S.W.2d 31, 38 (Tex.App. 1990); *Flamm v. American Association of University Women*, 201 F.3d 144, 151 (2d Cir.2000).

The damages for the business disparagement claim require a showing of special damages that were realized or lost, such as specific lost sales, loss

of trade, or loss of other dealings. *Hurlbut*, 749 S.W.2d at 767; *Astoria Indus. V. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex.App.-Fort Worth 2007, pet. denied); *Newsome v. brod*, 89 S.W.3d 732, 735 (Tex. App.-Houston [1st Dist.] 2002, no pet.). To prove causation, the disparagement doesn't have to be the sole, exclusive factor causing the plaintiff's damages, but must play a substantial part in inducing others not to deal with the plaintiff. *Johnson v. Hospital Corp.*, 95 F.3d 383, 391 (5th Cir.1996); *Hurlbut* at 767.

The trial court appropriately found that, "KG established by clear and specific evidence, a prima facie case for defamation and business disparagement," specifically stating during his ruling that not only was malice found, but exceeded by finding actual malice. (C.R. 739). Further, the trial court overruled, "Morin's objections to the affidavits of Kimberly Kleinhans, Martin Garza and Michael Siegler." *Id.*

### 1. Trial Court Specifically Found KG's Exhibits Were Timely and Admissible

Morin improperly states in his brief that the only evidence of the falsity of Morin's Yelp statement (alleging that KG sent hungover associates to court) came from affidavits of Siegler and Garza only. (A.B. 22:2). However, additional evidence of the falsity of this Yelp statement came from Kimberly Kleinhans affidavit as well. (C.R. 493-494).

The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado*[3], 897 S.W.2d 750, 753 (Tex. 1995); *citing Gee v. Liberty Mut. Fire Ins. Co.* 765 S.W.2d 394, 396 (Tex.1989). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. Id. At 753-754; *See GT & MC, Inc. v. Texas City Ref., Inc*., 822 S.W.2d 252, 257 (Tex.App.— Houston [1st Dist.] 1991, writ denied); Atlantic Mut. Ins. Co. v. Middleman, 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

Here, the judgment [or rulings], do not *just* turn on the exclusion of evidence. In the case at hand, the trial court's ruling turns on denying Morin's Motion to Dismiss, whether it was found to be timely filed or not. (739). Further, another of the trial court's ruling turns on denying Morin's objections to KG's affidavits whether the filing of the objections were found to be timely or not. (739).

Therefore, the trial court found that all 3 affidavits submitted by KG as evidence were found by the trial court to be admissible and timely and proper, whether or not Morin's objections were considered in making this determination.

---

[3] We conclude that the trial court did not abuse its discretion by excluding all evidence relating to negligent training and supervision based on discretionary powers under the Tort Claims Act. *City of Brownsville v. Alvarado*[3], 897 S.W.2d 750, 753 (Tex. 1995).

### a. KG's Evidence Timely Filed 19 Days and 3 Days Prior to Motion to Dismiss Setting

The Act only sets deadlines for the filer of the Motion to Dismiss (Tex. Civ. Prac. & Rem. Code).

**September 30, 2014**—Morin served with this lawsuit

**December 1, 2014**— Section 27.003(b) deadline for Morin to file Motion to Dismiss (failed to file until December 3, 2014)

**January 30, 2015**— Section 27.004(a) deadline for Morin's Hearing on the Motion to Dismiss (no Hearing noticed by this date)

**February 13-14, 2015**—Morin unilaterally notices setting for February 26, 2015 and KG files Motion to Strike setting based on unavailability notice for February 18, 2015-February 25, 2015 and deposition on another case on February 26, 2015

**February 17, 2015**—Setting on Motion to Strike and no ruling from judge, rather agreement reached between the parties and the court to March 5, 2015 reset date

**February 26, 2015** —KG not present, no parties announced (R.R. 3:1-9).

**March 2, 2015**—KG's response filed and supplemented March 4, 2015

**March 5, 2015**—Hearing began and ended on Motion to Dismiss

Morin attempts to confuse this Court with his references to setting dates. It is important to point out that no hearing was announced or called on February 26,

2015 because Morin had improperly set the Motion to Dismiss on a jury week docket, rather than on a non-jury week docket. (Appx. 8).

KG timely filed on February 17, 2015 and amended February 18, 2015 all documents requesting the court to strike the Motion to Dismiss based on Morin's missed deadlines. (C.R. 98-119, 120-192). Further, a response to the Motion to Dismiss was timely filed and hand-delivered on March 2, 2015 and supplemented on March 4, 2015, all before the hearing date. (C.R. 206-467, 468-729).

Furthermore, Morin failed to present trial testimony or argument alleging any facts showing how he was prejudice by anything supplemented in the March 4, 2015 filing of the response to the Motion to Dismiss, likely because there wasn't any undue surprise because there were no substantive changes that would cause Morin undue prejudice.

Therefore, KG's Motion to Strike was filed and served 19 days before the hearing and KG's response was filed and served 3 days before the hearing. (C.R. 98, 206). Further, Morin's reference to Texas Rule of Civil Procedure 21(b) is misleading as this rule applies to pleadings requesting relief, not responsive pleadings. If Texas Rule of Civil Procedure 21(b) applied to responses, most counsel would wait to file pleadings requesting relief until 3 days prior to the

hearing so that it would preclude a response.  Therefore, it is clear Rule 21(b) was not intended to apply to responses.

Finally, there is no deadline to file a response pursuant to the Act.

In contrast, there is a clear deadline pursuant to the Act, for Morin to file the Motion to Dismiss.  Not only did he miss the initial filing deadline of the entire Motion, he also tries to argue that KG pleadings were late, even though KG pleadings were filed 3 days before his affidavits and objections.  Morin was over 2 hours late to the motion to dismiss hearing on March 5, 2015.  In addition to being this obscenely late, he pulled over to efile affidavits and objections after the time the hearing was set to begin (filings KG couldn't access because they were already waiting at the courthouse for Morin).  Clearly, with facts such as these, it is hard to comprehend how he can argue KG filings were late when his weren't even filed until after the time the hearing was scheduled to begin.

Therefore, there is no reversible error as the trial court acted within guiding principles of the Texas Rules of Civil Procedure and the Act.

### b.  KG Affidavits Properly Authenticated

Seigler's affidavit is properly authenticated because a notary can clearly notarize a document in which his or her employer has an interest.  Tex. Civ. Prac. & Rem. Code §121.002.  Further, a notary public is not disqualified from

performing a notarization of a document, solely because of the notary public's ownership of stock or participation in or employment that has an interest in the underlying transaction. Tex. Fin. Code §199.002.

In *Phillips*, articles of association were signed by 52 employees, 51 of which had theirs notarized by another employee of the company. The employee who notarized the other employees' articles of association had her own notarized by a different person. The court there held that because the Legislature's intent in requiring those items to be notarized was to ensure genuine identity of the persons associated with the documents, and to prevent fraud, there was no bad faith. Therefore "the fact that one of the associates happened to be the notary who took the acknowledgements of the other 51 associates does not render invalid the character granted pursuant thereto." *Phillips v. Brazosport Sav. & Loan Ass'n*, 366 S.W.2d 929 (Tex. 1963).

Similarly, in *Wortham*, a relator who was also a notary public, authenticated a verification for the petition filed for another relator in the case. The court stated "the interest of Watson in the subject matter of the suit was such as to disqualify him from administering the oath which he administered to Kirgin or to render Kirgin's affidavit void or defective." *Wortham Indep. Sch. Dist. v. State*, 244 S.W.2d 838 (Tex. Civ. App.—Waco 1951). This holding has been cited and supported by Ex Parte Karedia.

Here, like in both *Phillips* and *Wortham*, Kimberly Kleinhans is an employee of the company, which does not disqualify her from taking the acknowledgement of a written instrument in which KG has an interest. The trial court properly ruled that Morin's objections to the affidavit of Siegler were overruled. (C.R. 739). The acknowledgement is valid and lawful and likewise, this Court should affirm the trial court's ruling as based in law as set forth above.

Furthermore, both Kleinhans and Garza's affidavits were sworn by an outside notaries (Appx. 9, 12), so even if Seigler's affidavit isn't considered, there is enough evidence from Kleinhans and Garza's affidavit to support the trial court's ruling concerning Morin's Motion to Dismiss so the one allege issue is irrelevant to overturn this case.

### c. Garza Emailed Affidavit Testimony & Waived Formal Service

Morin holds out that Garza's affidavit testimony was forced by fake command of the court. (A.B. 24-25). The record clearly supports otherwise. (C.R. 467, 729) (Appx. 9).

The February 24, 2015 email from Garza was voluntarily written and emailed to Kleinhans and states, verbatim, the statements authenticated in an affidavit by Garza. (C.R. 467, 729) (Appx. 9). There is no evidence that anyone other than Garza typed up this email and sent it to Kleinhans. *Id.* Furthermore, in this same

email Garza requests that KG subpoena the testimony so that Garza could paper his file. *Id.*

Garza was not served by constable or process server with the affidavit. He voluntarily accepted service of the subpoena. Garza could object to the timing or form of the subpoena, as he is the party such rules cited by Morin were meant to protect. Tex. R. Civ. Pro. 176.6(d) and (e). Garza, an attorney himself, did not object or quash the subpoena. Rather, he waived formal service of the subpoena by signing showing his acceptance of service and notarized and returned the affidavit simultaneously (Appx. 10). Kleinhans abided by all rules concerning subpoenas because Garza was not formally served and Kleinhans did not know if Garza would voluntarily accept the subpoena. As soon as Kleinhans received the signed affidavit and testimony (all in the same email), she immediately forwarded it to counsel for Morin. (Appx. 10).

Morin objected for similar reasons in trial court and the trial court properly ruled that Morin's objections to the affidavit of Martin Garza were overruled. (C.R. 739), and likewise, this Court should affirm the trial court's ruling.

**2.  Trial Court Specifically Found KG's Evidence was Clear and Specific**

The decision from the *Serafine v. Blunt* case already dealt with this issue. *Id.*

No. 03-12-00726-CV. ____ S.W.3d__, 2015 WL 2061922 (Tex. App. – Austin

May 1, 2015, n.p.h.:

> The Act does not define "clear and specific" evidence; consequently, we give these terms their ordinary meaning. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "Clear" means "free from doubt," "sure," or " unambiguous." Black's Law Dictionary 307 (10th ed. 2014); *Lipsky II*, 2015 WL 1870073, at *6 (approving this definition of "clear"); see also Webster's Third New Int'l Dictionary 419 (2002) ("easily understood," "without obscurity or ambiguity," "easy to perceive or determine with certainty"). "Specific" means "explicit" or "relating to a particular named thing." Black's Law Dictionary, at 1616; *In re Lipsky*, ___ S.W.3d ___, 6, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015) (approving this definition of "specific"); see also Webster's Third New Int'l Dictionary, at 2187 ("being peculiar to the thing or relation in question," "characterized by precise formulation or accurate restriction," or "free from such ambiguity as results from careless lack of precision or from omission of pertinent matter"). We conclude that the term "clear and specific evidence" refers to the <u>quality of evidence</u> required to establish a prima facie case, while the term "prima facie case" refers to the amount of evidence required to satisfy the nonmovant's minimal factual burden. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *10 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (mem. op.).

### a. Falsity Supported by 4 Evidentiary Items

Three affidavits containing 4 quality pieces of evidence, clearly and specifically support that Michael Siegler was not drunk or hung over: 1) the testimony of Michael Siegler, 2) the testimony of opposing counsel, Martin Garza, 3) the testimony of Kimberly Kleinhans, and 4) the State Bar's findings.

First, the affidavit of Siegler himself proves that, "I was not intoxicated nor was I hung over…at no time did LEVI MORIN ever ask me if I was drunk or hung-over," (C.R. 727) (Appx. 11).

Second, the affidavit of Garza proves that, "Michael Siegler handled the matter professionally and to a high ethical standard. We conferred and negotiated for over 6 hours on the day of the hearing. At no time did I even suspect or see any signs of intoxication," (C.R. 729) (Appx. 9).

Third, the affidavit of Kimberly Kleinhans proves that Siegler, "never had previous reports that Siegler reported to work drunk or hung-over and has not had any reports since the false allegation of Morin stating that Siegler was hung-over at the March 10, 2014 setting. Furthermore, I corresponded with Michael Siegler on the day prior and on the date of the hearing and at no time did he ever appear to be drunk or hung-over. His speech was clear, he was alert and his thoughts were well organized." (C.R. 493). (Appx. 9).

Forth, Kimberly Kleinhans affidavit proves that Morin attempted to file a bar complaint against Siegler with similar allegations to the Yelp posting. (C.R. 494-495). Morin's complaint containing the same allegations that were found to be meritless on the face of the complaint, which were immediately thrown out without even an initial investigation by the State Bar, "LEVI MORIN received notice that his complaints were dismissed only days or weeks prior to posting his Yelp review. So Morin knew that his complaints were found by the State Bar of Texas to have no basis, yet he went on to make the same false and baseless claims online to attempt to make it appear as if licenses were in jeopardy when that was not the truth." *Id.*

Therefore, there is no reversible error as the trial court properly analyzed the evidence presented and found that the affidavits contained quality testimony that equates to clear and specific evidence, and likewise, its ruling should be upheld.

### b. Damages

The KG amended petition and Kimberly Kleinhans affidavit clearly and specifically supported damages claimed (C.R. 198-199, 494).

The KG amended petition states:

"LAW OFFICE OF KG, PLLC has suffered general and special damages in the past and will continue to suffer general and special damages

in the future as the posting is still active.  LAW OFFICE OF KG, PLLC damages include but are not limited to: damage to reputation, loss of reputation, mental anguish, and pecuniary loses (lost sales, and loss of potential clients) of $52,971.25 to $120,000 depending on preferred method of calculation." (C.R. 198-199).

Further, Kimberly Kleinhans affidavit states:

"On average, LAW OFFICE OF KLEINHANS GRUBER, PLLC earns roughly $10,000 per client.  This is a conservative average because our personal injury settlements on average range in attorney fees from $30,000 to $3,000 and our family law cases usually average about $10,000.  This average is based on my knowledge as the primary partner of the firm that handles all the billing and financials of the firm.  Additionally, this number is based on my review of cases and income off of cases.  Furthermore, Keith Kleinhans handles the firm's intake calls and retains roughly 40-50% of all calls we get to the firm that are interested in retaining our services. We do not pay for advertisement, we obtain our business from referrals and online traffic, therefore, it is without question that our business has declined since LEVI MORIN's posting.  The decline is reflected in our overall business income from the date of the posting to the present and supported by Quickbooks that accounts for all of our firm income, which shows that from July 2013- December 2013, our income was $149,303.03, however for the similar months the following year after LEVI MORIN's June 2014 posting, our income was $96,331.78, which is $52,971.25 lower.  Therefore, based on my review of financial documents and client billing, the current Yelp posting (see Exhibit A-2) and the Yelp activity reports (see Exhibit A-3 ), minimally, LAW OFFICE OF KLEINHANS GRUBER, PLLC lost income ranging from $52,971.25 to $120,000 depending on method of calculation." (C.R. 494, 502-507, 508-542).

### i.  Noneconomic Damages to Reputation Are Presumed

"Noneconomic damages" means damages awarded for the purpose of compensating a claimant for … injury to reputation.... Tex. Civ. Prac. & Rem.Code

§ 41.001(12). Similar to general damages, these non-economic damages do not require certainty of actual monetized loss. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142 (Tex. 2014), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 373, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (White, J., dissenting); 2 Dan B. Dobbs, *Law of Remedies* § 8.1(4) (2d ed.1993); *Restatement (Second) of Torts* § 621 cmt. a (1977); *id.* § 905 cmt. i (1979). Instead, they are measured by an amount that "a reasonable person could possibly estimate as fair compensation." *Id.*, citing *Restatement (Second) of Torts* § 905 cmt. i. "Non-economic damages like these [mental anguish, character, and reputation damages] cannot be determined by mathematical precision; by their nature, they can be determined only by the exercise of sound judgment." *Bentley*, 94 S.W.3d at 605.

Further, "[L]anguage which concerns a person engaged in a lawful occupation 'will be actionable, if it affects him therein in a manner that may as a necessary consequence, or does as a natural or proximate consequence, prevent him deriving therefrom that pecuniary reward which probably he might otherwise have obtained.' *Bell Publ'g Co. v. Garrett Eng'g Co.,* 154 S.W.2d 885, 887 (Tex.Civ.App.-Galveston 1941) aff'd, 170 S.W.2d at 197. "Our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish." *Bentley* at 604. Even in the *Waste Mgmt. of Tex., Inc.* case where the

court found that the non-economic damages were not the sort of general damages that necessarily flow from such a defamatory publication, nominal damages were still upheld. *Id.* at 162.

The plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *In re Lipsky*, ___ S.W.3d ___, 6, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015), citing *Waste Mgmt. of Tex., Inc.* at 162.

KG clearly fits in the category of defamation per se as Morin was clearly trying to injure KG's profession by holding out that KG's attorneys are incompetent drunks and thus, damages are presumed. (C.R. 195-205).

However, even if damages are not presumed, KG clearly sets forth necessary facts to support damage to reputation in Kimberly Kleinhans' affidavit:

- Yelp webpages showing 2 users gave it a thumbs up that Morin's review was helpful, and given it is all negative reviews of KG, it is clear that 2 potential clients did not choose to use KG for legal services. (C.R. 494, 502-507)

- Yelp emails showing 193 people that have visited the Yelp site, only 14 have turned into leads (C.R. 494, 508-542)

Therefore, the amount of damages that KG should be awarded is an issue for the jury to determine at a later date, but for purposes of this inquiry, it is presumed that KG has suffered nominal damages, so minimally, for the purposes of inquiry

nominal damages are clearly supported by the law. *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013) (Remarks that adversely reflect on a person's fitness to conduct his or her business trade are also deemed defamatory per se.); *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012) (per curiam) (Texas law presumes nominal damages when the defamation is per se); *In re Lipsky* at 34 ("pleading and proof of particular damage is not required to prevail on a claim of defamation per se, and thus actual damage is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply.")

### ii. Economic Damages to KG Earning Capacity and Lost Income

"Economic damages" means compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages. Tex. Civ. Prac. & Rem.Code § 41.001(4). Economic damages do require proof of pecuniary loss for either harm to property, harm to earning capacity, or the creation of liabilities. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142 (Tex. 2014), citing *Restatement (Second) of Torts § 906*.

KG has clearly identified pecuniary loses and harms to earning capacity. There are 2 potential clients that were seeking attorney services and on KG's Yelp site, when they noticed Morin's false review, as 2 users gave it a thumbs up that it

was helpful, and likewise, it is reasonable to conclude that Morin's positing is a substantial part in inducing those 2 potential clients not to use KG for legal services. (C.R. 502-507). Furthermore, Yelp Activity reviews support the same as explained above that of the 193 people that have visited the Yelp site, only 14 have turned into leads, and given the fact that all the other reviews posted on the Yelp page are positive, raving, 5-star reviews, the only conclusion that can be drawn is that Morin's Yelp posting is causing the low number of leads generated from the high number of views. (C.R. 508-542). In conclusion, the estimated damages caused have been summarized and documented by Kimberly Kleinhans in her attached affidavit to be lost income ranging from $52,971.25 to $120,000 depending on method of calculation. (C.R. 494).

All the above statements directly from the referenced affidavits point to clear and specific evidence by referencing:

- $52,971.25 to $120,000 estimated damages from date of posting from June 24, 2014 through February 27, 2015 points to specific monetary figures and dollar amounts calculated by KG's Quickbook software (C.R. 494)

- we obtain our business from referrals and online traffic (clearly showing that KG tracks and knows where they get their business) (C.R. 494)

- on average, LAW OFFICE OF KLEINHANS GRUBER, PLLC earns roughly $10,000 per client….based review of cases and income off of cases (shows KG knows how profitable the cases are) (C.R. 494)

— 46 —

- references lost profits of $2,500 incurred by having to respond to the frivolous Motion to Dismiss (C.R. 495)

As one would expect, the court in *Burbage* denied finding economic damages when those damages claimed were for the sale of the funeral home in its entirety and when asked the cost of the funeral home, trial testimony contained statements such as, "if I had to throw something out there…." However, in contrast, Kimberly Kleinhans affidavit supports she has thoroughly reviewed QuickBooks, financial documents, client billing, the current Yelp posting and the Yelp activity reports to calculate a specific figure based on the review of these documents, likewise supporting a finding that clear and specific evidence exists to support economic damages. (C.R. 494, 502-507, 508-542).

Therefore, there is no reversible error as the trial court acted within guiding principles of case law that hold that KG only has to prove that the harm is a substantial part in causing the damages, not that it is the exclusive factor in causing the damages, and therefore, this Court should uphold the trial court's ruling. *Johnson* at 391; *Hurlbut* at 767.

### c. Malice Supported by Motive and Intentional Acts

A defendant acts with malice when it (1) knows the statement in question is false, or (2) acts with reckless disregard for whether the statement is true, or (3)

acts with ill will, or (4) intends to interfere in the plaintiff's economic interest. *Hurlbut*, 749 S.W.2d 762, 766. Furthermore, "…care and motive are factors to be considered." *Hearst Corp. v. Skeen,* 159 S.W.3d 633 (Tex. 2005); *Bentley*, 94 S.W.3d at 596.

Morin had motive to harm KG's economic interest.

On June 4, 2014, in response to receipt of the Order of Withdraw, Morin emailed Kimberly Kleinhans an email stating, "You're a horrible person, a predator, and I will make sure that's known on as many fronts as I can." (C.R. 197). When KG requested Morin to remove the posting, Morin responded sending several emails to Kimberly Kleinhans stating, "go fuck yourself," and "biggest piece of shit lawyer I've ever not met," and "wait ten days and see if I'm as big of a pussy as you." (C.R. 198) (Appx. 4-5).

Morin's acts were intentional to harm KG's economic interest.

Morin's acts show ill will; actually supporting a higher standard of the type of malice required for a media plaintiff, even though KG is a non-media plaintiff and only requires a showing of negligence. *In re Lipsky* at 25, citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571(Tex. 1998) (A private individual need only prove negligence, whereas a public figure or official must prove actual

malice).  The trial court agreed by denying Morin's Motion to Dismiss against the business disparagement claim that requires the higher finding of malice. (739).

Morin never attempted to verify the truth or falsity of these statements at time of publishing, even though the statements could have easily been verified by asking Michael Siegler if he was hung over or by sending an email following the hearing to KG requesting that they investigate whether Michael Siegler was hung over at the setting. (C.R. 88-89).

Additionally, the Texas State Bar further alerted Morin that his statements were unsubstantiated by notifying him that his bar complaint was found on its face, to be without merit and would not be investigated. (C.R. 197, 494-495).  Morin knew at the time of posting that his complaints were found by the State Bar of Texas to have no basis, yet he went on to make the same false and baseless claims online to attempt to make it appear as if licenses were in jeopardy when that was not the truth.  *Id.*  Morin's argument on this point is misplaced as the malicious act is not that Morin sent a complaint to the State Bar as Morin argues—rather, the malicious act is that Morin knew his complaint was found by the bar to be without merit, and that after being noticed, Morin disregarded that notice and posted on Yelp.

Further, "given the conduct and dishonesty and disrespect that I have seen him display in the course of the 2+ years that I represented him, there is no doubt in my mind, his intent to do harm to myself and the firm on as many fronts as is possible." (C.R. 495) (Appx. 12). Further, support of Morin's dishonesty is corroborated in Kimberly Kleinhans affidavit supporting his dishonest conduct during the course of her representation in which Morin attempted to get out of 2 settlement agreements after written settlement was reached and approved by him. (C.R. 495, 690, 728) (Appx. 12).

Finally, the controverting affidavits by Michael Siegler (C.R. 727) and Martin Garza (C.R. 729) and Kimberly Kleinhans (C.R. 493-495) stating that Michael Siegler support that Morin was fabricating statements in his affidavit about the condition of Michael Siegler as each affidavit provides a basis for the statements, most notably, opposing counsel states that Michael Sigler negotiated 6 hours with him and at no time showed signs of being intoxicated. (Appx. 9, 11-12).

Therefore, it is clear as stated in the paragraphs immediately above, Morin had motive and did not act with care—which are factors supporting a finding of malice. Morin did not make any attempt to verify the truth of the statements made, and further, now that he knows statements posted are false, he has failed to take any remedy. Additionally, the affidavit testimony and emails further support Morin's intent to cause harm to the firm's reputation and pecuniary interest in

retaliation for being denied representation and for being corrected, and likewise, this Court should find that clear and specific evidence supports that Morin had malice, and likewise uphold the trial court's ruling.

**At No Time Did Morin Act Timely**

It is undisputed that Morin habitually missed deadline after deadline as set forth on pages 18-20 above. Such defiant disregard for the law clearly does not support a good cause finding.

**B. TRIAL COURT SPECIFICALLY FOUND HEARING WAS UNTIMELY**

Morin's plea to the Court that he was trying to reach an agreement concerning discovery is without merit. Despite Morin's requests for limited discovery, KG always clearly responded in the referenced emails that full discovery responses would be necessary, or KG would seek a hearing on the matter, "Please advise whether you are in agreement to answer the discovery that was served on you nearly 45 days ago, and if so, by what date you will be answering the discovery…" (C.R. 122 a-d, 155-158) (Appx. 6). As KG stated to Morin in these emails, KG was holding off on setting a discovery hearing as Morin alluded that he may not be going forward with his Motion to Dismiss, and further, KG was waiting for Morin to answer whether he was going to respond to the full discovery served, "This [discovery] hearing will need to be set prior to your

requested [Motion to Dismiss] setting on a date dependent on your response about whether you are in agreement to [answer all] discovery." (C.R. 155) (Appx. 6).

Thereafter the Motion to Dismiss was scheduled, without any agreement, Morin unilaterally sent over a self-serving subset of documents of his choosing that were only beneficial to his case and objected to anything relevant or of use to KG's case. (C.R. 122) (Appx. 6). Morin's refusal to respond to KG about whether he was going to fully comply with discovery does not constitute discovery discussions.

The only reason that KG did not seek a discovery hearing is because Morin unilaterally set the Motion to Dismiss immediately after KG's noticed unavailability and noticed her of the setting immediately before the noticed unavailability, making it impossible for KG to get a hearing on such matter. (C.R. 101). Morin's email to KG reflects the same, "that [the Motion to Dismiss setting] will leave you with no time for discovery even if the judge thinks you deserve it. (Appx. 7).

KG presented testimony to the trial court of how it was prejudiced by Morin's habitual failure to comply with deadlines' imposed by the Act, which include but are not limited to the following: KG's noticed unavailability was planned to occur following the Motion to Dismiss setting to allow KG adequate

time to prepare a response, if Morin actually decided to go forward with the Motion to Dismiss (as Morin was considering KG's offer to dismiss the case with Morin's agreement to remove the Yelp post). (C.R. 190). Since Morin's Motion to Dismiss was scheduled well after the January 30, 2015 hearing deadline, and noticed immediately before KG's noticed unavailability to occur immediately following KG's noticed unavailability, KG was prejudice by not having time to properly respond to the Motion to Dismiss, "I am spending all my time taking case of preliminary issues there is no time for me to review the Motion to Dismiss and respond." (C.R. 188).

The trial court took KG's testimony concerning discovery and prejudice caused by Morin's delay and properly found no good cause for an extension because as the facts stated herein support, there were no on-going discovery discussions, and therefore the trial court's ruling should be upheld as they are in the best position to judge credibility of testimony.

## C. TRIAL COURT SPECIFICALLY FOUND MORIN EXHIBITS TO BE UNTIMELY AND NO GOOD CAUSE SUBSTANTIATED

Just as Morin's excuses for missing the above hearing deadline, there is no record and Morin failed to file any pleadings on the issue. Morin now asserts excuses not presented to the trial court. This is the first time KG is hearing Morin's argument that he forgot to attach the exhibits. However, this argument is

flawed as his invoice attached to the brief this is in response to, stated on the date 2 days after the filing deadline, "Finalize and file revised motion with attachment and proposed order." (A.B. 56). The term finalize does not support refiling because one "forgot" —it supports that one is still working after the deadline to complete something that hasn't been completed by the deadline.

Likewise, the trial court is well-known to be the best facility to evaluate testimony and that is all we have here, testimony the trial court heard and is not available for the Appellate Court to review, "[A]ppellate courts should show almost total deference to a trial court's findings of fact especially when those findings are based on an evaluation of credibility and demeanor—i.e..." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)(internal citations omitted).

Findings relating to whether there is a good enough excuse to have good cause are the exact type of findings that are based on the trial court's evaluation of the credibility and demeanor of Morin v. credibility and demeanor of KG.

There was no good cause for the trial court to permit the exhibits or a late hearing setting, and its ruling should be upheld.

**D.** **MORIN'S ATTORNEY FEES CONTESTED IN AFFIDAVIT AS CLEARLY UNREASONABLE AND LOGICALLY UNNECESSARY**

KG clearly contests Morin's lawyer fees in length in Kimberly Kleinhans' affidavit naming 6 reasons for why they are unreasonable and unnecessary, most notably in that Morin's lawyer is charging at a rate higher ($285/hour is the range Morin alleges is his rate) than the rate he is billing Morin ($75/hour). (C.R. 91, 495-496) (Appx. 13).

Additionally, KG objected to Morin's fee affidavit in the response to the Motion to Dismiss as not being reasonably incurred as set forth in Kleinhans' affidavit and for failing to produce attorney fee invoices to support charges. (C.R. 483-484).

KG objects to Morin's attempt to supplement attorney fee evidence by attaching an appendix with additional attorney fee testimony that wasn't part of the trial court's evidence. (A.B. 52-53). "The trial court's ruling will not be disturbed absent evidence that it acted unreasonably, arbitrarily, or without reference to any guiding legal principles." *Gainsco County Mutual Insurance Co. v. Martinez*, 27 S.W.3d 97, 104 (Tex. App.—San Antonio 2000), review granted, (Oct. 12, 2000)).

The trial court's ruling concerning denying Morin's Motion to Dismiss on various grounds should be upheld, and likewise, the trial court properly found that

Morin is not entitled to attorney fees pursuant to the Act when his motion is denied, and likewise, the trial court's ruling should be upheld.

### E.    KG'S FEES UNCONTESTED AND KG ENTITLED TO FEES

To the contrary, KG presented sufficient evidence of attorney fees for preparation in trial court of $2,500, which is substantially less than the amount incurred in responding to the Motion to Dismiss or dealing with all of Morin's missed deadlines, and thus, clearly reasonable and necessary and awardable pursuant to the Act. (C.R. 127-128, 484, 492-493). "If the court finds that a Motion to Dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code § 27.009. Furthermore, KG is entitled to post-motion fees as sanctions against counsel for Morin for filing this frivolous appeal.

The court should sever and remand only on issue of awarding KG fees so that the trial court can determine the proper fee and sanction award.

### Conclusion

KG prays that the Court affirm the trial court's ruling denying Morin's Motion to Dismiss and remanding only the issue of attorney fees payable by Morin to KG.

Respectfully submitted,

LAW OFFICE OF KLEINHANS GRUBER, PLLC

By: /s/ Kimberly G. Kleinhans
    Kimberly G. Kleinhans
    kim@lawofficeofkg.com
    State Bar No.  24062755
    Keith L. Kleinhans
    keith@lawofficeofkg.com
    State Bar No. 24065565
    12600 Hill Country Blvd, Ste. R-275
    Austin, Texas 78738
    Telephone: 512.961.8512
    Facsimile: 512.623.7320

## CERTIFICATE OF COMPLIANCE

This Brief of Appellee, Law Office of Kleinhans Gruber, PLLC, was prepared with Microsoft Word. According to that program's word-count function, the sections covered by all sections contain 12,962 words for the entire brief.

# CERTIFICATE OF SERVICE

I certify that a true copy of this pleading was served on each attorney of record or party in accordance with the Texas Rules of Appellate Procedure on July 1, 2015.

The Olsen Firm, PLLC
Leif Olsen
4830 Wilson Road, Ste. 300
Humble, Texas 77396
Telephone: 281.849.8382
Facsimile: 281.248.2190
Email: leif@olsonappeals.com
**VIA ESERVICE**

/s/ Kimberly G. Kleinhans

No. 03-15-00174-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

LEVI MORIN,

Appellant,

v.

LAW OFFICE OF KLEINHANS GRUBER, PLLC,

Appellee.

From Cause No. D-1-GN-14-003874; 201st Judicial District Court
Travis County, Texas

BRIEF OF APPELLEE, LAW OFFICE OF KLEINHANS GRUBER, PLLC
A/K/A LAW OFFICE OF KG, PLLC

APPENDIX TO BRIEF OF APPELLANT

Kimberly G. Kleinhans
State Bar No. 24062755
Keith L. Kleinhans
State Bar No. 24065565
12600 Hill Country Blvd., Ste. R-275
Austin, TX 78738
512.961.8512 (telephone)
512.623.7320 (facsimile)

ATTORNEYS FOR APPELLEE,
LAW OFFICE OF KLEINHANS GRUBER, PLLC

# Appendix Contents

| **Document** | **Tab** |
|---|---|
| 1. Trial Court's Judgment, dated March 26, 2015 | **TAB 1** |
| 2. Filings Concerning Morin's Missed Appellate Deadlines | **TAB 2** |
| 3. Email between KG and Morin re KG's Withdraw | **TAB 3** |
| 4. Email between KG and Morin Showing Morin's Malice Motive, dated June 5, 2015 | **TAB 4** |
| 5. Emails between KG and Morin Showing Morin's Malice Motive, dated September 24, 2014 | **TAB 5** |
| 6. Emails between KG and Counsel for Morin Showing No On-Going Discovery Negotiations | **TAB 6** |
| 7. Email to KG from Counsel for Morin Re Discovery | **TAB 7** |
| 8. Travis County District Court Jury Docket Schedule | **TAB 8** |
| 9. Garza Email with Affidavit Content and Affidavit | **TAB 9** |
| 10. Emails Showing Counsel for Morin Received Notice of Subpoena of Garza | **TAB 10** |
| 11. Siegler Affidavit | **TAB 11** |
| 12. Kleinhans Affidavit | **TAB 12** |
| 13. Morin's Fee Contract at $75/hr. | **TAB 13** |

**TAB 1**
Trial Court's Judgment, dated March 26, 2015
C.R. 739

Filed in The District Court
of Travis County, Texas

MAR 2 6 2015

At \_\_\_\_\_4:30\_\_\_\_P M.

Velva L. Price, District Clerk

No. D-1-GN-14-003874

Law Office of Kleinhans
  Gruber, PLLC

v.

Levi Morin

201st District Court
Travis County, Texas

## Amended Order on Motion to Dismiss

The Court has considered Morin's motion to dismiss; Kleinhans Gruber's Second Amended Motion to Strike or Deny Morin's Motion to Dismiss; the responses and replies on those motions; the parties' objections; the evidence; and counsel's argument. Based upon that consideration, the Court:

1. **Finds** no good cause to extend the deadline for Morin to file his motion to dismiss;

2. **Finds** Morin did not set the hearing on his motion to dismiss within 60 days after service of the motion, and did not meet any of the exceptions indicating the hearing can be set later than the 60th day;

3. **Strikes** the exhibits to Morin's motion to dismiss, which were filed after the deadline for Morin to file his motion;

4. **Overrules** Morin's objections to the affidavits of Kimberly Kleinhans, Martin Garza, and Michael Siegler;

5. **Finds** that Kleinhans Gruber established, by clear and specific evidence, a prima facie case for defamation and business disparagement based upon Morin's statement that Kleinhans Gruber "sen[t] hung over 'associates' to court dates [Michael Seigler];"

6. **Finds** that Morin did not establish each element of an affirmative defense by a preponderance of the evidence; and

7. **Denies** Morin's motion to dismiss.

Signed on March 26th, 2015, at Austin, Texas.

Stephen Yelenosky
District Judge

Case # D-1-GN-14-003874



003954108

ENTERED

739

**TAB 2**
Filings Concerning Morin's Missed Appellate Deadlines

ACCEPTED
03-15-00174-CV
4598458
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/23/2015 11:59:27 AM
JEFFREY D. KYLE
CLERK

No. 03-15-00174-CV

| | |
|---|---|
| LEVI MORIN, <br> *Appellant,* <br><br> v. <br><br> LAW OFFICE OF KLEINHANS <br> GRUBER, PLLC, <br> *Appellee.* | Third Court of Appeals <br> Austin, Texas |

## Morin's Motion to Extend Time to Notice Appeal

Defendant-Appellant Levi Morin moves for an extension of his time to notice his appeal. He has already filed his notice. Exh. A. The case is pending in the 201st District Court of Travis County as No. D-1-GN-14-003874, *Law Office of Kleinhans Gruber PLLC v. Levi Morin.*

### A. Factual and statutory background.

On December 1, Morin filed his motion to dismiss under the Texas Citizens Participation Act. That made January 30 — Day 60 — the deadline for a hearing on the motion. TEX. CIV. PRAC. & REM. CODE § 27.004(a). There was no hearing by then. However, the Act extends the hearing deadline from 60 to 90 days if the trial court finds good cause. *Id.* The motion was set for hearing on Day 90, February 26. The TCPA deems a motion denied if the deadline passes without a hearing. *Id* at § 27.008(a).

The district court began the hearing on February 26. It recessed the hearing until March 5, when it orally denied the motion. Morin

impliedly requested an extension when he filed his notice of appeal the next day; he now follows that implied request with a formal motion.

## B. Appellate deadlines.

The TCPA sets no timetable for a court's finding of good cause to extend the hearing deadline. There are two possible deadlines for a notice of appeal. They depend on whether the trial court must find good cause for an extension before the 60-day hearing deadline or whether it can do so later.

### 1. If the law requires an early finding.

The law firm — the plaintiff below; the appellee here — has argued that the good-cause finding must come before the 60-day hearing deadline runs. Otherwise, it argues, the motion is denied by operation of law. If the firm is correct, then Morin's deadline to notice the appeal was February 19, and his deadline to request an extension was March 6. TEX. R. APP. P. 26.1(b), 26.3. The trial court hasn't yet signed a written order denying Morin's motion; if that written order states that there is no good cause for extension, then Morin's right to appeal is lost retroactively.

### 2. If the law permits a later finding.

On the other hand, the lack of a timetable and the requirement that the TCPA's language be read "liberally to effectuate its purpose and intent fully," TEX. CIV. PRAC. & REM. CODE § 27.011(b), sug-

gest that there is no pre-deadline requirement. This is supported by the procedural posture of a case: If a TCPA motion is denied as a matter of law, it remains before the trial court. A trial court's management of its docket is accorded wide discretion. It retains that discretion until the defendant — the TCPA movant — invokes the jurisdiction of the appellate court. As long as the trial court hears the motion on (or before) Day 90, as permitted by the statute, there is no persuasive reason for limiting its discretion by requiring a good-cause finding as of Day 60.

This interpretation is practical, as well. The TCPA's deadlines are intended to protect defendants by affording them a rapid resolution to a potential threat to their rights to expression. *See* TEX. CIV. PRAC. & REM. CODE § 27.002. If a trial court doesn't, or can't, hear the motion by Day 60, defendants who insist on a more-rapid resolution can treat that lack of hearing as a denial by operation of law and invoke the appellate court's jurisdiction. *Id.* at § 27.008. But defendants who prefer to try to reach an accord with plaintiffs can continue to do so and have their motions heard through Day 90, a date on which a resisting plaintiff can argue that the motion should be denied because there was no good cause for the extension. If a trial court finds no good cause, then the defendants' appellate deadlines would begin running not retroactively, but as of the ruling that there was no good cause.

### 3. Deadline confusion.

But the Act doesn't make clear which of these two interpretations applies. Nor have Texas's appellate courts interpreted the Act to put a more-certain judicial gloss on its terms. Thus, Morin is faced with a choice. He can wait until a written ruling from the trial court and risk losing his chance to appeal altogether. Or he can file his notice his appeal before the district court signs a written order of denial, protecting his right to appeal and avoiding the expense and burden (to himself and the courts) of appealing twice.

## C. Good cause for extension.

### 1. Avoiding procedural forfeiture.

Extending Morin's deadline to appeal will enable him to protect his legal interests in two ways. One, if the notice-of-appeal deadline began to run on Day 60, he has timely invoked the Court's jurisdiction. Two, if the district court's written order denying Morin's motion includes a finding that there was no good cause, and if the Act is construed to require a good-cause finding before Day 60, Morin would lose his right to appeal — and lose it retroactively.

Either alternative would countenance a procedural default over a resolution on the merits, which Texas law has long disfavored. *See, e.g., Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012). Extending Morin's deadline satisfies our state's preference for decisions on the

merits and enables Morin to avoid not just a procedural default, but the possibility of a procedural default that applies retroactively.

## 2. Efforts to reach agreement.

There is good cause to extend the time for Morin to notice his appeal. Morin's counsel attempted to reach an agreement with the firm regarding the need for discovery. Those attempts proved unfruitful, but pursuing them took Morin past Day 60. *See* Exh. B. He contacted the trial court and requested that it set a hearing on Day 90, the only day remaining in the 90-day window that wasn't covered by the firm's counsel's vacation letter. Extending Morin's appellate deadline will see that he isn't punished for his pursuit of an amicable resolution — a resolution that Texas has long preferred because of its greater likelihood of creating peaceful and harmonious relations. *See Wright v. Sydow*, 173 S.W.3d 534, 551–52 (Tex. App. - Houston [14th Dist.] 2004, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE §§ 154.002, 154.003.

## Conclusion and Prayer

The Court should extend Morin's time to notice his appeal through March 6, 2015. Morin further prays for all other relief to which he may be entitled.

Respectfully submitted,

THE OLSON FIRM PLLC

/s/ Leif A. Olson

Leif A. Olson

leif@olsonappeals.com

State Bar No. 24032801

PMB 188

4830 Wilson Road, Suite 300

Humble, Texas 77396

(281) 849-8382

**Counsel for Appellant Levi Morin**

## Certificate of Conference

I conferred with Kimberly Kleinhans regarding this motion. She informed me that the firm opposes it.

/s/ Leif A. Olson

## Certificate of Service

On March 23, 2015, I served a copy of this *Morin's Motion for Extension of Time to Notice Appeal* upon counsel for KG by electronic service:

LAW OFFICE OF KLEINHANS GRUBER, PLLC
Kimberly G. Kleinhans
kim@lawofficeofkg.com
700 Lavaca, Suite 1400
Austin, Texas 78701

/s/ Leif A. Olson

No. D-1-GN-14-003874

| | |
|---|---|
| Law Office of Kleinhans Gruber, PLLC,<br>*Plaintiff,*<br><br>v.<br><br>Levi Morin,<br>*Defendant.* | 201st District Court<br>Travis County, Texas |

## Morin's Notice of Appeal

The district court denied defendant Levi Morin's motion to dismiss in an oral ruling on March 5, 2015. In the alternative, Morin's motion was denied by operation of law on January 30. He appeals the denial, on whichever date it was rendered, to the Third Court of Appeals.

This appeal is accelerated.

Respectfully submitted,

The Olson Firm PLLC

/s/ Leif A. Olson

Leif A. Olson
  leif@olsonappeals.com
  State Bar No. 24032801
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382
**Counsel for Defendant Levi Morin**

## Certificate of Service

I certify that on March 6, 2015, I served a copy of this *Morin's Notice of Appeal* upon counsel for KG by electronic service:

Law Office of Kleinhans Gruber, PLLC
Kimberly G. Kleinhans
kim@lawofficeofkg.com
12600 Hill Country Blvd., Ste. R275
Austin, Texas 78738
(512) 961-8512

/s/ Leif A. Olson

Exhibit A

No. 03-15-_____-CV

LEVI MORIN,
   *Appellant*,

v.

LAW OFFICE OF KLEINHANS
GRUBER, PLLC,
   *Appellee.*

Third Court of Appeals
Austin, Texas

## Declaration of Leif A. Olson in Support of Morin's Motion to Extend Time to Notice Appeal

1. I represent Levi Morin, the appellant, in this case, and I did so in the trial court. I am in all ways competent to make a declaration, and the facts in this declaration are within my personal knowledge.

2. The Law Office of Kleinhans Gruber, PLLC, is the plaintiff below and the appellee here. Kim Kleinhans is a partner in that firm and has represented the firm throughout this case.

3. The timeline that follows my signature is a true and accurate representation of my communications with Kleinhans and the firm throughout this case. It is based on my personal recollections as well as the records I make in the usual course of business, which are made at roughly the same time as the activity they document and on which I rely in my practice.

> My name is Leif Alexander Olson. I was born on October 10, 1975. My mailing address is PMB 188, 4830 Wilson Road, Suite 300, Humble, Texas 77396. I declare under the penalty of perjury that the statements in this declaration are true and correct.

SIGNED in Harris County, Texas, on March 20, 2015.

_____
Leif A. Olson

| Date | Event |
|------|-------|
| 10/27/14 | Olson calls the firm to introduce himself and state that he is representing Morin. He leaves a voice message asking if the firm would consider putting a hold on discovery so the parties can negotiate. Kleinhans replies by email agreeing to do so. |
| | Kleinhans emails that she can't retrieve Morin's answer from the e-filing system. Olson emails it to her. |
| | Olson emails Kleinhans a letter proposing that the firm nonsuit the case rather than spend actual cost and opportunity cost pursuing claims that Morin will ask be dismissed under the Act. He notes that a TCPA motion will stay discovery. He closes by asking for a quick response and quick negotiations because the deadline to file a TCPA motion is December 1. |
| 10/28/14 | Kleinhans emails Olson asking for his fax number. Olson responds that he consents to email service of anything the firm wants to send. Kleinhans insists on the number. Olson furnishes it. |
| | The firm serves requests for production, requests for admission, and interrogatories. Kleinhans emails Olson that the firm refuses to nonsuit its case because it is serious about pursuing the case, up to and including a jury trial. She proposes a settlement that would require a payment from Morin and states that the firm will need discovery if Morin persists in seeking a TCPA dismissal. |
| 10/31/14 | Olson informs Kleinhans that Morin declines the settlement offer. He states that he will look over the discovery to see if there will be objections and asks Kleinhans for dates in December when a TCPA hearing |

| | |
|---|---|
| | could be set. Kleinhans responds with three dates. |
| 12/1/14 | Morin files his motion to dismiss. |
| 12/3/14 | Morin refiles his motion to dismiss, this time attaching the exhibits that his counsel forgot to attach the first time. |
| 12/4/14 | Kleinhans emails that the recent circumstances and the firm's incredibly full docket have led it to agree to a non-suit if Morin will remove his review.<br><br>Kleinhans also asks for a copy of Morin's complaint to the State Bar. Olson responds that Morin doesn't have a copy. |
| 12/5/14 | Olson emails Kleinhans that he is seeking a response for the firm's settlement offer. |
| 12/22/14 | Olson emails Kleinhans that Morin declines her offer. He furnishes Morin's counter-offer.<br><br>Kleinhans emails Olson that she never received Morin's discovery responses. Olson reminds her that the TCPA motion stayed all discovery. He asks if there are specific items the firm would like so he can attempt to reach an agreement on discovery rather than having to seek court intervention.<br><br>Kleinhans states that she thought that Morin would be furnishing discovery despite the stay. Olson apologizes for giving that impression.<br><br>The firm nonsuits its claims. Kleinhans tells Olson to disregard her comment about discovery because of the nonsuit and the firm's settlement offer: It will dismiss with prejudice if Morin deletes his review.<br><br>In a series of emails, Kleinhans expresses her belief that Morin's motion is rendered moot by the nonsuit. Olson |

| | |
|---|---|
| | responds to disagree and sends citations to cases to support his view. Kleinhans expresses her disagreement, noting that one case, in particular, wasn't decided until after the firm filed its suit. |
| 12/30/15 | Olson emails Kleinhans that Morin declines the firm's offer. He asks for dates in January for a hearing on the motion. |
| 1/5/15 | Kleinhans responds that the firm will need discovery if Morin intends to pursue his motion to dismiss. She asks for a date by which the discovery will be served and states that the firm will need a hearing on its nonsuit. |
| 1/19/15 | Olson calls to discuss whether the parties can agree to discovery and a hearing date. He reaches Kleinhans at home on her cell phone. Kleinhans expresses doubt that there is anything to discuss, but they set a call for January 21. |
| 1/21/15 | Olson emails to apologize for not being able to call and asking for a time to schedule another call. |
| 1/26/15 | Kleinhans's office leaves a voicemail asking to reschedule the conference. Olson returns the call and later emails that a Wednesday conference is fine. |
| 1/28/15 | Olson and Kleinhans confer by telephone regarding the motion to dismiss and the firm's discovery requests. Kleinhans states that she doesn't think there is anything to discuss; the firm needs the discovery, and it needs all of the discovery, and it won't agree to limit its requests. Olson again states that the firm isn't entitled to discovery and that Morin doesn't intend to respond to it, but he is happy to discuss an agreement for limited production.<br><br>Kleinhans follows up the conversation with an email |

| | |
|---|---|
| | asking for the discovery and stating that she will need time to review it, draft a motion to compel, and have a hearing on the motion and firm's nonsuit. |
| 2/13/15 | Olson sets a hearing on the motion to dismiss for February 27, which is the last day that a hearing can be held unless the Court orders discovery. He emails Kleinhans that he still believes that the firm isn't entitled to any discovery, but attaches a set of voluntary responses that address what appear to be the firm's main contentions. He attaches a copy of the notice of hearing to the email. |
| 2/14/15–2/15/15 | Kleinhans and Olson exchange emails disagreeing over whether deadlines were met, whether there is good cause to extend the hearing deadline, and other matters. Kleinhans states that she will file a motion to continue if Olson doesn't agree to a continuance. Olson doesn't agree. |
| 2/15/15 | The firm moves to continue and to strike Morin's papers. It sets a hearing for February 17. |
| 2/17/15 | The Court hears the motion to continue. Later, Olson, at Kleinhans's request, emails her the cases that were discussed. Olson declines the firm's requests to reveal his attorney-client communications. |



# COURT OF APPEALS

### THIRD DISTRICT OF TEXAS

P.O. BOX 12547, AUSTIN, TEXAS 78711-2547
www.txcourts.gov/3rdcoa.aspx
(512) 463-1733

JEFF L. ROSE, CHIEF JUSTICE
DAVID PURYEAR, JUSTICE
BOB PEMBERTON, JUSTICE
MELISSA GOODWIN, JUSTICE
SCOTT K. FIELD, JUSTICE
CINDY OLSON BOURLAND, JUSTICE

JEFFREY D. KYLE, CLERK

June 1, 2015

Mr. Leif A. Olson
The Olson Firm PLLC
PMB 188
4830 Wilson Road, Suite 300
Humble, TX 77396
* DELIVERED VIA E-MAIL *

RE:     Court of Appeals Number:     03-15-00174-CV
        Trial Court Case Number:     D-1-GN-14-003874

Style:   Levi Morin
         v. Law Office of Kleinhans Gruber, PLLC

Dear Counsel:

Appellant's brief was due in this Court on **May 27, 2015** and is overdue. *See* Tex. R. App. P. 38.6(a). If appellant fails to file a brief, the Court may dismiss the appeal for want of prosecution unless appellant reasonably explains the failure and appellee is not significantly injured by that failure. If this Court does not receive a satisfactory response to this notice on or before **Thursday, June 11, 2015**, the Court **may** dismiss the appeal for want of prosecution. Motions for extension must be accompanied by the $10.00 filing fee and a certificate of conference. *See* Tex. R. App. P. 5 and 10.1(a)(5).

Very truly yours,

JEFFREY D. KYLE, CLERK

BY: *Amy Strother*

Amy Strother, Deputy Clerk

cc:     Ms. Kimberly G. Kleinhans

No. 03-15-00174-CV

Levi Morin,
  *Appellant,*

v.

Law Office of Kleinhans
Gruber, PLLC,
  *Appellee.*

Third Court of Appeals
Austin, Texas

## Morin's Motion for 14-day Briefing Extension

Because of his counsel's health issues and professional commitments, defendant-appellant Levi Morin moves for a 14-day extension of the deadline to file his opening brief. This is his first motion for an extension. The brief was originally due on May 27; the extension would make it due on June 10.

Morin's counsel has been fighting bronchitis since late April. From the week of April 20 through the week of May 11, he was in the office for not even a full week. He spent most of that time attempting to rest to get healthy.

The time that he was able to work was dominated by other professional commitments, many of them demanding his court presence on an emergency basis. These included:

- Client meetings related to emergency proceedings and conditions of the client's detention in *In re CTLI, LLC*, No 4:14-bk-33564 in the U.S. Bankruptcy Court for the Southern District of Texas;

- Preparation of an emergency motion to stay pending appeal in the appeal of the contempt order, No. 4:15-cv-1063 in the U.S. District Court for the Southern District of Texas;

- An April 29 status hearing on the client's detention conditions in *CTLI*, set on fewer than 24 hours' notice;

- Designation of the record and issues on appeal and coordinating the transcription of electronically recorded proceedings in *CTLI*, which was due on May 7;

- An emergency hearing on May 19, set on roughly 36 hours' notice, on the *CTLI* client's attempt to purge himself of contempt, which, unbeknownst to counsel, turned out to be a request to change the conditions of the contempt order to conditions with which he would prefer to comply;

- An emergency client meeting on May 26 following the court's order, issued that afternoon, setting a 10:30 hearing the next day on the client's statement to the marshals that he wished to purge himself of contempt;

- Further client meetings and the hearing on May 27, at which the client purged himself of contempt;

- Speaking on federal appeals at the TexasBarCLE/Texas Young Lawyers Association annual Federal Court Practice seminar in Dallas on May 15;

- Preparing the appellant's brief in *Samaniego v. Aliseda*, No. 03-14-00795-CV in the Third Court of Appeals, due on May 11; and

- Counseling a client on potential rehearing and petition issues in *Mahoney v. Slaughter*, No. 01-14-00471-CV in the First Court of Appeals, which the court decided on May 7.

These obligations and his illness have prevented Morin's counsel from preparing a brief that will properly present Morin's appellate issues and arguments.

Morin seeks this extension not for delay, but so justice can be done. The plaintiff-appellee law firm won't be prejudiced by this extension, which moves Morin's obligation to file from the accelerated-appeal deadline to just after the standard deadline.

## Conclusion and Prayer

Morin prays that the Court set June 10, 2015, as the deadline for him to file his opening brief. He further prays for all other relief to which he may be entitled.

Respectfully submitted,

THE OLSON FIRM PLLC

/s/ Leif A. Olson

Leif A. Olson
leif@olsonappeals.com
State Bar No. 24032801
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396

(281) 849-8382
**Counsel for Appellant Levi Morin**

## Certificate of Conference

I contacted the appellees about this motion by telephone on May 28 and June 5 and by email on May 27, May 28, and June 5. At 4:38 p.m. on June 5, Keith Kleinhans informed me by email that the firm opposes the requested extension.

/s/ Leif A. Olson

## Certificate of Service

On June 6, 2015, I served a copy of this *Morin's Motion for 14-day Briefing Extension* upon the firm's counsel by electronic service:

LAW OFFICE OF KLEINHANS GRUBER, PLLC
Kimberly G. Kleinhans
kim@lawofficeofkg.com
700 Lavaca, Suite 1400
Austin, Texas 78701

/s/ Leif A. Olson

ACCEPTED
03-15-00174-CV
5648394
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/11/2015 9:18:09 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00174-CV

LEVI MORIN,
*Appellant,*

v.

LAW OFFICE OF KLEINHANS
GRUBER, PLLC,
*Appellee.*

Third Court of Appeals
Austin, Texas

## Morin's Motion for 1-day Briefing Extension

The bronchitis of Morin's counsel is apparently impervious to antibiotics; it flared up again, requiring that he be in bed to recover for most of June 10 and 11. He was thus unable to complete Morin's opening brief, and he asks the Court to extend the filing deadline by one more day. This is Morin's second request for an extension; it would move the briefing deadline from yesterday, June 10, to today, June 11.

This extension won't prejudice the appellee. Morin seeks this extension not for delay, but so justice can be done.

Morin prays that the Court set June 11, 2015, as the deadline for him to file his opening brief. He further prays for all other relief to which he may be entitled.

Respectfully submitted,

THE OLSON FIRM PLLC

/s/ Leif A. Olson

Leif A. Olson
 leif@olsonappeals.com
 State Bar No. 24032801
PMB 188

4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382
**Counsel for Appellant Levi Morin**

## Certificate of Conference

I attempted to confer on this motion with Keith Kleinhans, counsel for the appellee, by sending him a draft copy of it at 5:07 p.m. on June 11. By 9:00 p.m., I hadn't received a response. Because it has opposed other extension requests, I presume that the firm also opposes this one.

/s/ Leif A. Olson

## Certificate of Service

On June 6, 2015, I served a copy of this *Morin's Motion for 14-day Briefing Extension* upon Kimberly Kleinhans by electronic service with a courtesy copy to Keith Kleinhans (keith@lawofficeofkg.com) by email.

LAW OFFICE OF KLEINHANS GRUBER, PLLC
Kimberly G. Kleinhans
kim@lawofficeofkg.com
700 Lavaca, Suite 1400
Austin, Texas 78701
**Counsel for appellee**

/s/ Leif A. Olson

**TAB 3**
Email between KG and Morin re KG's Withdraw
C.R. 664

## Kimberly G. Kleinhans

**From:**        Kimberly G. Kleinhans <kim@lawofficeofkg.com>
**Sent:**        Wednesday, February 26, 2014 3:35 PM
**To:**          'Levi Morin (Levimorin@gmail.com)'
**Subject:**     FW: August 7th email
**Attachments:** 14-02.25_First Amended Motion for Enforcement.doc

**JournalPM:**   J

Levi-

Please find alternative counsel now as I do not feel that I can properly represent you given your current frustration that clearly we were unable to resolve today. I have asked so many times for the information to calculate the child support so that we could get the order entered with the court so that then we could proceed with a proper enforcement that would be more likely to be enforced, and to date, I still don't have that information. Further, as part of our contract, the client has the obligation to provide information timely and to confer to make sure we have included all information requested in pleadings. The fact that you are frustrated that you have to take part in your own case is not something I can change. Therefore, I think it is best for you to find alternative counsel as soon as possible so that they have time to prepare and attend the hearing. Unless I hear from you otherwise, I am going to file the attached amended enforcement to include the May violations.

Best regards,

Kimberly G. Kleinhans

> **From:** Levi Morin [mailto:levimorin@gmail.com]
> **Sent:** Wednesday, February 26, 2014 2:12 PM
> **To:** Kimberly G. Kleinhans
> **Subject:** Re: August 7th email
>
> Frustrated with you, professionally, should be the last thing that I feel. I need to start making plans to find someone else I need to know if that should be now or after this hearing thing.
>
>
> Levi Morin
>
> MWD Engineer
> The Directional Drilling Company
> 11390 FM 830
> Willis, TX 77318
> Office:  936-856-4332
> Fax:     936-856-8678
> Mobile:  830-456-3342
> Levi.Morin@DirectionalDrillers.com
> LeviMorin@gmail.com





PLAINTIFF'S EXHIBIT
A-514

**TAB 4**
Email between KG and Morin Showing Morin's
Malice Motive, dated June 5, 2015
C.R. 704

## Kimberly G. Kleinhans

| | |
|---|---|
| **From:** | Kimberly G. Kleinhans <kim@lawofficeofkg.com> |
| **Sent:** | Tuesday, June 10, 2014 11:03 AM |
| **To:** | 'Levi Morin (Levimorin@gmail.com)' |
| **Subject:** | FW: Copy of Withdraw Documents |

**JournalPM:**      J

Levi-
Was this email intended to be sent to me?

Best regards,

Kimberly G. Kleinhans

> **From:** Levi Morin [mailto:levimorin@gmail.com]
> **Sent:** Thursday, June 05, 2014 9:57 AM
> **To:** Kimberly G. Kleinhans
> **Subject:** Re: Copy of Withdraw Documents

My greatest wish is that you would have to go through something like this. You're a horrible person, a predator, and I will make sure that's known on as many fronts as I can.

Best regards.

On Jun 4, 2014 2:34 PM, "Kimberly G. Kleinhans" <kim@lawofficeofkg.com> wrote:

Levi-

Please keep the attached for your records. We are just waiting for the judge to sign the withdraw order and I will forward the signed order to you upon receipt. Thank you.

Best regards,

Kimberly G. Kleinhans, Attorney at Law

Law Offices of KG, PLLC

Facsimile: 512.623.7320

Office: 512.961.8512

kim@lawofficeofkg.com

1

**TAB 5**
Emails between KG and Morin Showing Morin's
Malice Motive, dated September 24, 2014
C.R. 713, 717, 706

| | |
|---|---|
| **From:** | Levi Morin <levimorin@gmail.com> |
| **Sent:** | Wednesday, September 24, 2014 1:42 PM |
| **To:** | Kimberly G. Kleinhans |
| **Subject:** | Re: Yelp Review Removal |

**JournalPM:** J

My response was in regard to you trying to suppress my first amendment rights, and for that you are the biggest piece of shit lawyer I've ever not met. You say you hold yourself to a code of ethics and then do that. You can surely go fuck yourself as those two are separate issues which, as you are claiming in your response, are not. Therefore it is not representative of the facts. Secondly you need to acquire permission to use my copyrighted material. So no, everything in my order is correct. Wait ten days and see if I'm being as big of a pussy as you. I don't threaten people, like you do, Kim.

Levi Morin

MWD Engineer
The Directional Drilling Company
11390 FM 830
Willis, TX 77318
Office: 936-856-4332
Fax: 936-856-8678
Mobile: 830-456-3342
Levi.Morin@DirectionalDrillers.com
LeviMorin@gmail.com



This e-mail, including any attached files, may contain confidential and privileged information for the sole use of the intended recipient. Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive information for the intended recipient), please contact the sender by reply e-mail and delete all copies of this message.

On Wed, Sep 24, 2014 at 1:23 PM, Kimberly G. Kleinhans <kim@lawofficeofkg.com> wrote:

Levi-

It appears that you copied and pasted a cease and desist letter from the internet as it doesn't apply to this situation. Furthermore, the factually accurate and true response we posted in response to your defamatory and slanderous per se posting about our firm (to attempt to mitigate damages to our firm's reputation) will be automatically removed when you remove your defamatory and slanderous per se posting about our firm. Per the law, we have to attempt to mitigate damages, which is why that response is necessary.

1

713

| | |
|---|---|
| **From:** | Kimberly G. Kleinhans <kim@lawofficeofkg.com> |
| **Sent:** | Wednesday, September 24, 2014 4:05 PM |
| **To:** | 'Keith L. Kleinhans (keith@lawofficeofkg.com)' |
| **Subject:** | FW: FW: Yelp Review Removal |

Best regards,

Kimberly G. Kleinhans

**From:** Levi Morin [mailto:levimorin@gmail.com]
**Sent:** Wednesday, September 24, 2014 3:52 PM
**To:** Kimberly G. Kleinhans
**Subject:** Re: FW: Yelp Review Removal

My emails are a fixed intellectual property that I have not given consent for you to redistribute in any way shape or form. "Go fuck yourself" is an expression and in the context of this email is my Intellectual property therefore copyrighted. You have used excerpts without permission, you are not in compliance with federal law. I have not defamed or slandered anyone so good luck with that. Your statement, however, is taking bits and pieces of a conversation and stitching them together to create something that is wholly not what I said and pawning it off as if it were...

I'm all for trying out this new Anti-SLAPP deal so you're more than welcome to spend all the money you'd like trying to suppress free speech with some frivolous lawsuit.

I'm right here if you'd like to send someone before I get back-

31.690926, -101.430554

Levi Morin

MWD Engineer
The Directional Drilling Company
11390 FM 830
Willis, TX 77318
Office:    936-856-4332
Fax:       936-856-8678
Mobile:  830-456-3342
Levi.Morin@DirectionalDrillers.com
LeviMorin@gmail.com

1

717

## Kimberly G. Kleinhans

| | |
|---|---|
| From: | Levi Morin <levimorin@gmail.com> |
| Sent: | Wednesday, August 20, 2014 5:25 PM |
| To: | Kimberly G. Kleinhans |
| Subject: | Re: FW: URGENT - Yelp Review Removal |

Pretty sure you should a) read the article as opposed to trying to move me to do something based on fear, I did a google search as well and this was one of the first articles that came up, b) look up libel then c) go fuck yourself for trying use strong arm tactics with me because i don't think you're a good lawyer.

You should re-read my review again because apparently you don't understand that nothing in there is false or slanderous, and given that you don't understand the definition of slander - even libel.

There is nothing that I want from you Kim, this review has nothing to do with your weird "respect me" issues, it has everything to do with you not being a very good lawyer for me and the hopes that my experience will help someone make a better decision about what family lawyer to get.


Levi Morin

MWD Engineer
The Directional Drilling Company
11390 FM 830
Willis, TX 77318
Office:    936-856-4332
Fax:       936-856-8678
Mobile:   830-456-3342
Levi.Morin@DirectionalDrillers.com
LeviMorin@gmail.com



This e-mail, including any attached files, may contain confidential and privileged information for the sole use of the intended recipient. Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive information for the intended recipient), please contact the sender by reply e-mail and delete all copies of this message.

On Wed, Aug 20, 2014 at 4:24 PM, Kimberly G. Kleinhans <kim@lawofficeofkg.com> wrote:

Levi-

Please see the attached. If you don't remove the review, we will be drafting the petition tomorrow.


Best regards,

1

706

**TAB 6**
Emails between KG and Counsel for Morin Showing
No On-Going Discovery Negotiations
C.R. 122-123, 155-157

*motion under Section 27.004 must be set not later than the 60th day after the date of service of the motion unless*

*[1] the docket conditions of the court require a later hearing,*

*[2] upon a showing of good cause,*

*[3] or by agreement of the parties*

*... but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003..."*

15. As required by Section 27.004, to date, there has been [1] no Travis County docket conditions, [2] no timely finding of good cause by the court prior to running of the 60-day deadline (January 30, 2015) and [3] no agreement by the parties to extend the 60-day deadline to a 90-day deadline. The following email correspondence documents the same:

a) On January 5, 2015, LAW OFFICE OF KLEINHANS GRUBER, PLLC sent the attached email to counsel for LEVI MORIN requesting the following information, attached hereto an incorporated herein by reference as *Exhibit C*:

   i) whether he was going to answer discovery served 45 days prior, if not, a hearing would be necessary;

   ii) a date on which discovery would be provided, if not, hearing availability PRIOR to any setting on the Motion to Dismiss; and

   iii) a follow-up request for a copy of the bar complaints that LEVI MORIN filed against Kimberly Kleinhans and Michael Siegler (which were automatically dismissed without further review) that counsel for LEVI MORIN had repeated countless times, he was in agreement to provide.

b) On January 28, 2015, LAW OFFICE OF KLEINHANS GRUBER, PLLC sent the attached email to counsel for LEVI MORIN requesting the same information as requested in the January 5, 2015 email. Both the January 5, 2015 email and the January 28, 2015 email were ignored by counsel for LEVI MORIN, attached hereto an incorporated herein by reference as *Exhibit D.*

c) On Friday, February 13, 2015, at about 9:00 p.m., counsel for LEVI MORIN unilaterally sent over a self-serving subset of documents never discussed but solely of his choosing that are only beneficial to his case. Likewise, counsel for LEVI MORIN unilaterally decided that the setting for his Motion to Dismiss would be February 26, 2015, and there would be no time for any of LAW OFFICE OF KLEINHANS GRUBER, PLLC's motions that LAW OFFICE OF KLEINHANS GRUBER, PLLC had clearly noticed counsel for LEVI MORIN would be necessary prior to any setting for a Motion to Dismiss, attached hereto an incorporated herein by reference as *Exhibit E.*

LAW OFFICE OF KLEINHANS GRUBER, PLLC V. LEVI MORIN
SECOND AMENDED/SUPPLEMENTED MOTION TO STRIKE SETTING, ET. AL.          PAGE 3 OF 12

122

d) On February 14, 2015, upon receipt, LAW OFFICE OF KLEINHANS GRUBER, PLLC noticed counsel for LEVI MORIN of LAW OFFICE OF KLEINHANS GRUBER, PLLC's conflict for February 26, 2015 and counsel for LEVI MORIN refused to reschedule to a time and date which would provide proper notice of setting to LAW OFFICE OF KLEINHANS GRUBER, PLLC, attached hereto an incorporated herein by reference as *Exhibit F*.

16. On February 17, 2015, this Court found that an announcement for LEVI MORIN's Motion to Dismiss setting would be made on February 26, 2015, but that the case shall be recessed to March 5, 2015, at which time this Court shall hear the issues surrounding whether there is good cause to extend the time to allow the Motion to Dismiss past the 60-day deadline, whether there is good cause for discovery, et. al.

17. **6th deadline missed by LEVI MORIN**: On February 26, 2015, the 90th day ran from the date that LEVI MORIN's Motion to Dismiss would have been timely filed (December 1, 2014).

18. On March 5, 2015, it has been noticed that LEVI MORIN's Motion to Dismiss is set for hearing on the 97th day following a timely filing of a Motion to Dismiss.

19. Likewise, LAW OFFICE OF KLEINHANS GRUBER, PLLC seeks this Court's relief to hear this Motion and award the requested relief, primarily that LEVI MORIN's Motion to Dismiss be denied and fees or sanctions be awarded to encourage counsel for LEVI MORIN will comply with rules and deadlines in the future.

## C. Motion to Strike or Deny Morin's Motion to Dismiss

20. **4 Missed Statutory Deadlines**: This Court should strike LEVI MORIN's Motion to Dismiss setting as not being timely as counsel for LEVI MORIN has not missed just one, but four critical deadlines as follows:

a. file and serve the Motion to Dismiss in accordance with the Texas Participation Act (the "Act") as the deadline was December 1, 2014 and it wasn't filed or served with exhibits on LAW OFFICE OF KLEINHANS GRUBER, PLLC until December 3, 2014.

b. set a hearing in accordance with the Act as the 60-day deadline was January 30, 2015.

c. request a good cause extension PRIOR to the expiration of the January 30, 2015 60-day deadline.

d. set a hearing in accordance with the Act, with a timely finding of good cause within the 90-day deadline of February 26, 2015, as the Motion to Dismiss setting is not set until March 5, 2015 (97 days after the filing of the Motion to Dismiss).

LAW OFFICE OF KLEINHANS GRUBER, PLLC V. LEVI MORIN
SECOND AMENDED/SUPPLEMENTED MOTION TO STRIKE SETTING, ET. AL.    PAGE 4 OF 12

123

LAW OFFICE OF KLEINHANS GRUBER, PLLC

| Field | Value |
|---|---|
| Record Type | E |
| Date | 01/05/2015 |
| Time | 11:26:00 AM |
| Duration | 0:00:00 |
| Status | U |
| Description | |
| Client ID | 140184.00 |
| Contact | |
| User ID | KG |
| Sent/Received | R |
| To/From | Kimberly A. Gruber, Esq. <kim@lawofficeofkg.com> |
| Subject | Fwd: Offer declined; potential hearing dates |
| Spoke With | N |
| Returned Call | N |
| Left Message | N |
| Voice Message | N |
| First Date | mm/dd/yyyy |
| Last Date | mm/dd/yyyy |
| First Time | hh:mm:ss AM |
| Last Time | hh:mm:ss AM |
| Duration | |
| Research URL | |
| Research File | |
| E-mail Body | |

---------- Forwarded message ----------
From: Kimberly A. Gruber, Esq. <kim@lawofficeofkg.com>
Date: Mon, Jan 5, 2015 at 11:26 AM
Subject: Re: Offer declined; potential hearing dates
To: Leif Olson <leif@olsonappeals.com>

Leif-
I hope you had a good holiday.

We are still in the process of moving offices and in addition I am significantly decreasing my hours in the offices to care for our daughter and our son on the way (one of the primary reasons amoungst other personal reasons that we need to nonsuit this case). However, if you are going to push forward and make us present these facts to a judge, despite our agreement to nonsuit, we will need discovery.

Please advise whether you are in agreement to answer the discovery that was served on you nearly 45 days ago, and if so, by what date you will be answering the discovery and physically providing us production (this is the date you will physically have the production in the office NOT a date you will respond that we can send a copy service to Dallas). Additionally, we will need a hearing on our Notice of Nonsuit (and discovery or discovery deficiencies, if necessary). This hearing will need to be set prior to your requested setting on a date dependent on your response about whether you are in agreement to discovery.

PLAINTIFF'S EXHIBIT
C

02/15/2015 12:09 am

d       Value

Finally, I am still waiting on you to provide the documents that you told me you would provide relating to the bar complaint filed by Levi Morin against myself and Michael Seigler. Please let me know when I can expect those.

Thank you,

Kimberly Kleinhans

| Field | Value |
| --- | --- |
| Record Type | E |
| Date | 01/28/2015 |
| Time | 02:05:00 PM |
| Duration | 0:00:00 |
| Status | J |
| Description | Call with opposing counsel and email about settings/discovery. |
| Client ID | 140184.00 |
| Contact | Olsen/Lief |
| User ID | KG |
| Sent/Received | S |
| To/From | leif@olsonappeals.com |
| Subject | Law Office of KG, PLLC v. Morin - Settings |
| Spoke With | N |
| Returned Call | N |
| Left Message | N |
| Voice Message | N |
| First Date | mm/dd/yyyy |
| Last Date | mm/dd/yyyy |
| First Time | hh:mm:ss AM |
| Last Time | hh:mm:ss AM |
| Duration | |
| Research URL | |
| Research File | |
| E-mail Body | |

Leif-

Re our discussion today, in reviewing emails, I noticed that I am still waiting for you to let me know when you will get us discovery responses (and provide me with the complaints that Levi Morin filed on myself and Michael Seigler) so I know whether I need to set a Motion to Compel/Motion for Discovery along with our Motion to Determine Nonsuit/Strike Any Future Setting and in alt. to Revoke Notice of Nonsuit (whatever this motion may end up being called, we discussed this as well).

As soon as you get me dates when I will have discovery responses, I can look at the calendar to see the workload that I have at that time and to determine how long it will take me to review the discovery and allow me enough time to draft a Motion to Compel if needed prior to the settings on our Motion to Compel/Motion for Discovery along with our Motion to Determine Nonsuit/Strike Any Future Setting and in alt. to Revoke Notice of Nonsuit.



**TAB 7**
Email to KG from Counsel for Morin Re Discovery
C.R. 158

| | |
|---|---|
| **From:** | Leif Olson <leif@olsonappeals.com> |
| **Sent:** | Friday, February 13, 2015 7:38 PM |
| **To:** | Kimberly Kleinhans Gruber (kim@lawofficeofkg.com) |
| **Subject:** | KG v. Morin: Discovery; hearings |
| **Attachments:** | 150213.Pre-motion disco resps.pdf; Morin0001-Morin0014.pdf; 150213.NOH on TCPA motion.pdf |
| | |
| **JournalPM:** | J |

Kim,

1. I believe that I told you over the phone a while ago that the disciplinary counsel's office destroyed the file as part of their file-retention policy. (I may be confusing that with a discussion I was having with someone else on an unrelated bar-association event.) Levi doesn't have a copy.

2. My position on discovery hasn't changed: I don't think you're entitled to it. When we spoke over the phone, you weren't willing to limit your requests or identify the ones that you thought most important. So I put together responses that appear to address the arguments that will come up at the hearing on the motion to dismiss. They're attached. You should also be getting an e-served copy.

3. And, speaking of the hearing: The absolute drop-dead date for the court to hear the motion to dismiss is Thursday, February 26, so I've set a hearing for that morning. That will leave you with no time for discovery even if the judge thinks you deserve it. I can reset the hearing for sometime next week, which would give you at least a bit of time. I would prefer to have the hearing next Thursday, anyway, but according to your amended vacation letter, you'll already be out of town. If you would rather have the chance to see the judge before the hearing deadline, I'll reset it for Tuesday (whichever of a.m. or p.m. you prefer). Just let me know.

LEIF A. OLSON

BOARD CERTIFIED, CIVIL APPELLATE LAW · TEXAS BOARD OF LEGAL SPECIALIZATION
THE OLSON FIRM, PLLC
LEIF@OLSONAPPEALS.COM
(281) 849-8382
PMB 188 • 4830 Wilson Road, Suite 300
Humble, Texas 77396


PLAINTIFF'S EXHIBIT

158

# Tab 8
Travis County District Court Jury Docket Schedule

# 2015 SCHEDULE
## TRAVIS COUNTY CIVIL DISTRICT COURTS

Honorable Lora J. Livingston  
Local Administrative Judge

Warren Vavra  
Court Administrator

| January | | | July | | |
|---|---|---|---|---|---|
| | 5 | Non-Jury | | 6 | Jury |
| | 12 | Jury | | 13 | Non-Jury |
| | 19 | Non-Jury | | 20 | Jury |
| | 26 | Jury | | 27 | Non-Jury |
| **February** | | | **August** | | |
| | 2 | Non-Jury | | 3 | Non-Jury |
| | 9 | Jury | | 10 | Jury |
| | 16 | Non-Jury | | 17 | Non-Jury |
| | 23 | Jury | | 24 | Non-Jury |
| | | | | 31 | Jury |
| **March** | | | **September** | | |
| | 2 | Non-Jury | | 7 | Non-Jury |
| | 9 | Non-Jury | | 14 | Jury |
| | 16 | Settlement | | 21 | Non-Jury |
| | 23 | Jury | | 28 | Settlement |
| | 30 | Non-Jury | | | |
| **April** | | | **October** | | |
| | 6 | Jury | | 5 | Non-Jury |
| | 13 | Non-Jury | | 12 | Jury |
| | 20 | Jury | | 19 | Non-Jury |
| | 27 | Non-Jury | | 26 | Jury |
| **May** | | | **November** | | |
| | 4 | Jury | | 2 | Non-Jury |
| | 11 | Non-Jury | | 9 | Non-Jury |
| | 18 | Jury | | 16 | Jury |
| | 25 | Non-Jury | | 23 | Non-Jury |
| | | | | 30 | Jury |
| | | | **December** | | |
| **June** | | | | 7 | Non-Jury |
| | 1 | Jury | | 14 | Jury |
| | 8 | Non-Jury | | 21 | Non-Jury |
| | 15 | Jury | | 28 | Non-Jury |
| | 22 | Non-Jury | | | |
| | 29 | Non-Jury | | | |

| Holidays | January 1 New Year's Day | September 7 Labor Day |
|---|---|---|
| | January 19 MLK Day | November 11 Veterans Day |
| | February 16 President's Day | November 26-27 Thanksgiving |
| | May 25 Memorial Day | December 24-25 Christmas Observance |
| | July 3 Independence Day | |

### REGULARLY SCHEDULED DOCKETS WILL NOT OCCUR THE WEEKS OF:
March 16-20, Settlement Week  
September 28 – October 2, Settlement Week

**CIVIL CASE SETTING INFORMATION**  
To set civil cases online go to www.civilcourtsonline.org  
To obtain information, contact:  
Court Administrator's Office, P.O. Box 1748, Austin, Texas 78767  
Ph: (512) 854-2484  
http://www.traviscountycourts.org

**TAB 9**
Garza Email with Affidavit Content and Affidavit
C.R. 467, 729

## Kim Kleinhans

**From:** Martin Garza <martin@martinsgarza.com>
**Sent:** Tuesday, February 24, 2015 4:24 PM
**To:** Kim Kleinhans
**Subject:** Re: Strange Request on Morin - 3/10/14 hearing

Mr Siegler handled the matter professionally and to a high ethical standard. We conferred and negotiated for over 6 hours, including on the phone prior to the hearing. At no time did I even suspect or see any signs of intoxication. I will leave it at that. Its your fight not mine and I have my client's needs to consider. I would not be inclined to voluntarily sign an affidavit, however, if compelled to do so, I would cooperate.

The Garza Law Firm
1601 North Alamo, Suite 200
San Antonio, Texas 78215
210 354-4949
210 568-4278 fax
martin@martinsgarza.com

IMPORTANT/CONFIDENTIAL: This message from the Law Office of Martin S. Garza, is intended only for the use of the addressees shown above. It contains information that may be privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or materials transmitted in or with this message is strictly prohibited. If you received this message by mistake, please immediately call us 210.354.4949 and destroy the original message. Thank you.

STATE OF TEXAS          §

BEXAR COUNTY         §

## AFFIDAVIT OF MARTIN GARZA

Before me, the undersigned notary, on this day personally appeared MARTIN GARZA, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. "My name is MARTIN GARZA. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. On March 10, 2014, I was the opposing counsel for the setting on LEVI MORIN's Motion for Enforcement/Motion to Enter hearing.

3. Michael Seigler represented LEVI MORIN. I spoke with Michael Seigler prior to the hearing from about 8:15AM to 8:45AM on the phone and then throughout the day on March 10, 2014. Michael Seigler handled the matter professionally and to a high ethical standard. We conferred and negotiated for approximately 6 hours on the day of the hearing. At no time did I even suspect or see any signs of intoxication.

_____
MARTIN GARZA

SWORN TO and SUBSCRIBED before me by MARTIN GARZA on March 3, 2015.

_____
Notary Public in and for
the State of Texas

CONNIE GARZA
Notary Public, State of Texas
My Commission Expires
July 16, 2016


PLAINTIFF'S
EXHIBIT
C

729

**TAB 10**
Emails Showing Counsel for Morin Received
Notice of Subpoena of Garza

| Field | Value |
| --- | --- |
| Record Type | E |
| Date | 03/03/2015 |
| Time | 01:40:00 PM |
| Duration | 0:00:00 |
| Status | U |
| Description | Garza signed affidavit and subpoena in. |
| Client ID | 140184.00 |
| Contact | Garza/Martin |
| User ID | KG |
| Sent/Received | R |
| To/From | Martin Garza <martin@martinsgarza.com> |
| Subject | Re: Strange Request on Morin - 3/10/14 hearing |
| Spoke With | N |
| Returned Call | N |
| Left Message | N |
| Voice Message | N |
| First Date | mm/dd/yyyy |
| Last Date | mm/dd/yyyy |
| First Time | hh:mm:ss AM |
| Last Time | hh:mm:ss AM |
| Duration | |
| Research URL | |
| Research File | |
| E-mail Body | Please find as attached:<br><br>The Garza Law Firm<br>1601 North Alamo, Suite 200<br>San Antonio, Texas 78215<br>210 354-4949<br>210 568-4278 fax<br>martin@martinsgarza.com<br><br>IMPORTANT/CONFIDENTIAL: This message from the Law Office of Martin S. Garza, is intended only for the use of the addressees shown above. It contains information that may be privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are hereby notified that the copying, use or distribution of any information or materials transmitted in or with this message is strictly prohibited. If you received this message by mistake, please immediately call us 210.354.4949 and destroy the original message. Thank you. |
| E-mail Attachments | ATT00001.htm<br>Garza Affidavit and Subpoena Acceptance.pdf |
| To | kim@lawofficeofkg.com |
| From | Martin Garza <martin@martinsgarza.com> |
| CC | |
| BCC | |
| Phone # | |

## CAUSE NO. D-1-GN-14-003874

| | | |
|---|---|---|
| LAW OFFICE OF | § | IN THE DISTRICT COURT |
| KLEINHANS GRUBER, PLLC | § | |
| Plaintiff, | § | |
| v. | § | 201ˢᵗ JUDICIAL DISTRICT |
| | § | |
| LEVI MORIN, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

### SUBPOENA FOR AFFIDAVIT TESTIMONY

THIS SUBPOENA IS DIRECTED TO:    Martin Garza
The Garza Law Firm
1601 North Alamo, Suite 200
San Antonio, Texas 78215
210 354-4949
210 568-4278 fax
martin@martinsgarza.com

**Greetings:** You are hereby commanded to give testimony via affidavit in the above-named case.

**You are further instructed that the FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT.** Texas Rules of Civil Procedure 176.8(a), states,

> "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both."

This subpoena is issued at the request of Plaintiff, LAW OFFICE OF KLEINHANS GRUBER, PLLC, attorney of record, Kimberly G. Kleinhans.

**Date Subpoena Issued: February 26, 2015.**

## MEMORANDUM OF ACCEPTANCE

By my signature below, I hereby acknowledge that I accepted service of a copy of this subpoena. on ___3/3/___, 2015 and I confirm I will make any appropriate changes to the attached affidavit and fax the signed copy back to 512.623.7320.

SIGNED BY: _____
Martin Garza

STATE OF TEXAS                    §
BEXAR COUNTY                      §

## AFFIDAVIT OF MARTIN GARZA

Before me, the undersigned notary, on this day personally appeared MARTIN GARZA, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1.  "My name is MARTIN GARZA. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  On March 10, 2014, I was the opposing counsel for the setting on LEVI MORIN's Motion for Enforcement/Motion to Enter hearing.

3.  Michael Seigler represented LEVI MORIN. I spoke with Michael Seigler prior to the hearing from about 8:15AM to 8:45AM on the phone and then throughout the day on March 10, 2014. Michael Seigler handled the matter professionally and to a high ethical standard. We conferred and negotiated for approximately 6 hours on the day of the hearing. At no time did I even suspect or see any signs of intoxication.

_____
MARTIN GARZA

SWORN    TO    and    SUBSCRIBED    before    me    by    MARTIN    GARZA    on
March 3, 2015.



_____
Notary Public in and for
the State of Texas

CONNIE GARZA
Notary Public, State of Texas
My Commission Expires
July 16, 2016

| Field | Value |
| --- | --- |
| Record Type | E |
| Date | 03/03/2015 |
| Time | 02:33:00 PM |
| Duration | 0:00:00 |
| Status | U |
| Description | EMAIL OUT - to opposing counsel with Garza aff |
| Client ID | 140184.00 |
| Contact | Olsen/Lief |
| User ID | KG |
| Sent/Received | S |
| To/From | leif@olsonappeals.com |
| Subject | KG v Morin - supp to exhibits (attached Garza Affidavit) |
| Spoke With | N |
| Returned Call | N |
| Left Message | N |
| Voice Message | N |
| First Date | mm/dd/yyyy |
| Last Date | mm/dd/yyyy |
| First Time | hh:mm:ss AM |
| Last Time | hh:mm:ss AM |
| Duration | |
| Research URL | |
| Research File | |
| E-mail Body | Please confirm receipt. |

Best regards,


Kimberly G. Kleinhans, Attorney at Law

Law Offices of KG, PLLC

12600 Hill Country Blvd., Ste. R-275

Austin, Texas 78738

Facsimile: 512.623.7320

Office: 512.961.8512

kim@lawofficeofkg.com

www.lawofficeofkg.com

| Field | Value |
|---|---|
| | Please take notice that as of 12/31/14 we are no longer receiving any mail at any address other than as set forth in this email. Please update our address in your records accordingly. |

This message is intended only for the personal and confidential use of the recipient(s) named above. If you are not the intended recipient of this message you are hereby notified that any review, dissemination, distribution or copying of this message is strictly prohibited. This communication is for information purposes only. Email transmission cannot be guaranteed to be secure or error-free. As long as recipient(s) named above have signed an attorney-client fee agreement with Law Office of KG, PLLC, this e-mail correspondence may be attorney-client privileged. Law Office of Kleinhans Gruber, PLLC, is registered in the state of Texas and the county of Travis, to do business as Law Office of KG, PLLC.

| Field | Value |
|---|---|
| E-mail Attachments | image001(3).gif |
| | image003(1).png |
| | Garza Affidavit and Subpoena Acceptance.pdf |
| To | leif@olsonappeals.com |
| From | Kim Kleinhans <kim@lawofficeofkg.com> |
| CC | |
| BCC | |
| Phone # | |

| | | |
|---|---|---|
| LAW OFFICE OF | § | IN THE DISTRICT COURT |
| KLEINHANS GRUBER, PLLC | § | |
| Plaintiff, | § | |
| v. | § | 201ˢᵗ JUDICIAL DISTRICT |
| | § | |
| LEVI MORIN, | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## SUBPOENA FOR AFFIDAVIT TESTIMONY

THIS SUBPOENA IS DIRECTED TO:  Martin Garza
The Garza Law Firm
1601 North Alamo, Suite 200
San Antonio, Texas 78215
210 354-4949
210 568-4278 fax
martin@martinsgarza.com

**Greetings:** You are hereby commanded to give testimony via affidavit in the above-named case.

**You are further instructed that the FAILURE TO OBEY THIS SUBPOENA MAY BE TREATED AS A CONTEMPT OF COURT.** Texas Rules of Civil Procedure 176.8(a), states,

> "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both."

This subpoena is issued at the request of Plaintiff, LAW OFFICE OF KLEINHANS GRUBER, PLLC, attorney of record, Kimberly G. Kleinhans.

**Date Subpoena Issued: February 26, 2015.**

# MEMORANDUM OF ACCEPTANCE

By my signature below, I hereby acknowledge that I accepted service of a copy of this subpoena, on ___3/3/___, 2015 and I confirm I will make any appropriate changes to the attached affidavit and fax the signed copy back to 512.623.7320.

**SIGNED BY:** 

Martin Garza

STATE OF TEXAS §
BEXAR COUNTY §

## AFFIDAVIT OF MARTIN GARZA

Before me, the undersigned notary, on this day personally appeared MARTIN GARZA, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. "My name is MARTIN GARZA. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. On March 10, 2014, I was the opposing counsel for the setting on LEVI MORIN's Motion for Enforcement/Motion to Enter hearing.

3. Michael Seigler represented LEVI MORIN. I spoke with Michael Seigler prior to the hearing from about 8:15AM to 8:45AM on the phone and then throughout the day on March 10, 2014. Michael Seigler handled the matter professionally and to a high ethical standard. We conferred and negotiated for approximately 6 hours on the day of the hearing. At no time did I even suspect or see any signs of intoxication.

_____
MARTIN GARZA

SWORN TO and SUBSCRIBED before me by MARTIN GARZA on March 3, 2015.

_____
Notary Public in and for
the State of Texas



CONNIE GARZA
Notary Public, State of Texas
My Commission Expires
July 16, 2016

**TAB 11**
Siegler Affidavit
C.R. 727

STATE OF TEXAS § 
TRAVIS COUNTY §

## AFFIDAVIT OF MICHAEL SIEGLER

Before me, the undersigned notary, on this day personally appeared MICHAEL SIEGLER, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. "My name is MICHAEL SIEGLER. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. On March 10, 2014, I represented LEVI MORIN at his Motion for Enforcement/Motion to Enter hearing. I was not intoxicated nor was I hung over. I was not shaking, and did not smell of alcohol, and I was not sweating. At no time did LEVI MORIN ever ask me if I was drunk or hung-over.

3. On this same date, after LEVI MORIN and I thoroughly discussed the case circumstances and heavily negotiated the terms, LEVI MORIN voluntarily entered into the attached Rule 11 Agreement rather than having the case heard before the judge. The attached Rule 11 Agreement is attached hereto and incorporated herein by reference as *Exhibit B-1*.

MICHAEL SIEGLER

SWORN TO and SUBSCRIBED before me by MICHAEL SIEGLER on March 4, 2015.

Notary Public in and for the State of Texas



KIMBERLY G. KLEINHANS
Notary Public, State of Texas
My Commission Expires
December 16, 2018

PLAINTIFF'S
EXHIBIT
B

727

**TAB 12**
Kleinhans Affidavit
C.R. 487-497

STATE OF TEXAS            §
TRAVIS COUNTY            §

## AFFIDAVIT OF KIMBERLY G. KLEINHANS

Before me, the undersigned notary, on this day personally appeared KIMBERLY G. KLEINHANS, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1.  "My name is KIMBERLY G. KLEINHANS. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  **Original Yelp Posting:** Attached hereto are true and correct copies of the Yelp posting made by LEVI MORIN on LAW OFFICE OF KLEINHANS GRUBER, PLLC's Yelp page on June 24, 2014, which remained posted for minimally, 3 months, attached hereto and incorporated herein by reference as *Exhibit A-1*. This posting wasn't discovered by LAW OFFICE OF KLEINHANS GRUBER, PLLC until months later when a contact alerted LAW OFFICE OF KLEINHANS GRUBER, PLLC that they should check their Yelp page because there was a negative review driving business away from the firm. I printed the Yelp page on August 18, 2014, and attest that the webpage is true and correct and duplicates of pages from the Yelp webpage located at: http://www.yelp.com/biz/law-office-of-kleinhans-gruber-pllc-austin?osq=law+office+of+kg.

3.  **Current Yelp Posting:** Also attached hereto are true and correct copies of the current Yelp posting made by LEVI MORIN on LAW OFFICE OF KLEINHANS GRUBER, PLLC's Yelp page on June 24, 2014, attached hereto and incorporated herein by reference as *Exhibit A-2*. I printed the Yelp page on February 25, 2015 and February 26, 2015, and attest that excerpt is true and correct from the Yelp webpage located at: http://www.yelp.com/biz/law-office-of-kleinhans-gruber-pllc-austin?osq=law+office+of+kg. This posting shows that 2 users of Yelp found LEVI MORIN's posting to be useful, therefore it is clear that LAW OFFICE OF KLEINHANS GRUBER, PLLC lost 2 potential clients based on LEVI MORIN's false review.

4.  **Yelp Activity:** Also attached hereto are true and correct copies of emails I received from Yelp with the Yelp Activity on LAW OFFICE OF KLEINHANS GRUBER, PLLC's Yelp page where LEVI MORIN published the false statements that are the basis of this lawsuit that range from June 29, 2014 to February 24, 2015, attached hereto and incorporated herein by reference as *Exhibit A-3*. I attest that these emails are true and correct copies of the originals. This Yelp Activity set forth in these emails supports that of the 193 people that have visited the Yelp site, only 14 have turned into leads, and given the fact that all the other reviews posted on the Yelp page are positive, raving, 5-star reviews (refer to *Exhibit A-2* and *LEVI MORIN's Exhibits F-J* to his Motion to Dismiss which display all positive reviews on all other website public review



PLAINTIFF'S EXHIBIT A

forums), the only conclusion that can be drawn is that LEVI MORIN's Yelp posting is causing the low number of leads generated from the high number of views.

5.      **25 Monthly Billing Invoices:** Also attached hereto are true and correct copies of the 25 monthly billing invoices that were generated by LAW OFFICE OF KLEINHANS GRUBER, PLLC to show the work performed and the work billed for on LEVI MORIN's case, attached hereto and incorporated herein by reference as *Exhibit A-4*. These are true and correct copies of the invoices emailed and mailed to LEVI MORIN each month and I attest that these invoices are true and correct copies of the originals. These invoices support that LAW OFFICE OF KLEINHANS GRUBER, PLLC only ever billed for work they performed and billed in accordance with the hourly rates set forth in the contract with LEVI MORIN (See *Exhibit A-6*) and at no time, ever billed LEVI MORIN at a rate of $400.00 an hour.

6.      **Emails supporting LEVI MORIN Advised and all Questions Answered:** Also attached hereto are true and correct copies of 20+ emails exchanged by Kimberly Kleinhans and LEVI MORIN, attached hereto and incorporated herein by reference as *Exhibit A-5*.     I attest that these 20+ emails are true and correct copies.  These 20+ emails support that Kimberly Kleinhans provided an abundant amount of legal advice and meticulously answered all of LEVI MORIN's questions:

i)      On June 6, 2012 emails were exchanged between Kimberly Kleinhans and LEVI MORIN which support the detailed effort of Kimberly Kleinhans to create a calendar and document and assist LEVI MORIN in understanding his current possession schedule.   No other questions regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.1*.

ii)     On June 9, 2012, Kimberly Kleinhans sent an email to LEVI MORIN advising him of the potential need for a temporary order setting rather than final trial setting and provided the reasoning. No other questions regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.2*.

iii)    On June 12, 2012, LEVI MORIN questioned about the mediation process and Kimberly Kleinhans responded providing an explanation about mediation.  LEVI MORIN did not ask any other question or call for any further explanation, attached hereto and incorporated herein by reference as *Exhibit A-5.3*.

iv)     On June 26, 2012, Kimberly Kleinhans emailed LEVI MORIN requesting a time that they could, "...discuss the upcoming hearing on temporary orders...and talk about witnesses and evidence".  All issues

were discussed and LEVI MORIN was advised of what to expect. Further, there are no other calls or emails from LEVI MORIN concerning this scenario which would support that LEVI MORIN has any unanswered questions, attached hereto and incorporated herein by reference as *Exhibit A-5.4*.

v) On May 30, 2013, LEVI MORIN notified Kimberly that his child's mother was violating the order in place from the mediated settlement agreement reached and requested advice on what to do. Likewise, Kimberly Kleinhans provided LEVI MORIN with a copy of the agreement and advised that when an order isn't being followed, an enforcement action is necessary. No other questions regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.5*.

vi) On July 2, 2013, Kimberly advised LEVI MORIN about the drafting process of turning a Mediated Settlement Agreement into a final order. Kimberly informed LEVI MORIN she would need LEVI MORIN's recent income information to calculate child support as agreed in the Mediated Settlement Agreement that that is how child support would be calculated. No other questions regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.6*.

vii) On August 10, 2013, Kimberly advised LEVI MORIN to return the child to the child's mother in accordance with customary interpretation of the Mediated Settlement Agreement and The Texas Family Code, attached hereto and incorporated herein by reference as *Exhibit A-5.7*.

viii) On August 14, 2013, Kimberly responded to LEVI MORIN's aggressive reply to her advice, further advising LEVI MORIN of the difference of representation of a client in court vs. properly advising a client outside of. No other questions regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.7*.

ix) On October 18, 2013, Kimberly advised LEVI MORIN that she should draft the proposed order from the Mediated Settlement Agreement since opposing counsel had failed to do so to date, attached hereto and incorporated herein by reference as *Exhibit A-5.8*.

x) On October 21, 2013, Kimberly Kleinhans responded to LEVI MORIN's question about make-up possession time. No other questions

regarding the matter were emailed to Kimberly Kleinhans so it is reasonable to conclude that Kimberly Kleinhans fully addressed LEVI MORIN's concerns, attached hereto and incorporated herein by reference as *Exhibit A-5.8*.

xi) On October 26, 2013 and on November 16, 2013 and on December 27, 2013 and on December 28, 2014 and on January 6, 2014 and on February 19, 2014 and on February 21, 2014, Kimberly Kleinhans provided LEVI MORIN with the proposed order and advised LEVI MORIN that she was still waiting for the necessary financial documents in order to be able to calculate the child support figure. No response was received from LEVI MORIN, attached hereto and incorporated herein by reference as *Exhibit A-5.9.*

xii) On December 27-28, 2013, Kimberly Kleinhans responded to LEVI MORIN's request for advise on what to do since his child's mother was threatening to deny him Christmas possession, and likewise Kimberly Kleinhans responded with advise to call the cops to document her refusal for the Motion to Enforce but that, "there is a chance that the cops will not follow the MSA---it all depends on the cops and their knowledge of the law. This again is why I suggest that we need to get a signed order in this case..." No response was received from LEVI MORIN and no other correspondence was had with LEVI MORIN other than this email, attached hereto and incorporated herein by reference as *Exhibit A-5.10.*

xiii) On February 1, 2014, Kimberly Kleinhans responded to LEVI MORIN's request for a further explanation concerning a case update that Kimberly Kleinhans provided to LEVI MORIN on January 31, 2014.No response was received from LEVI MORIN, attached hereto and incorporated herein by reference as *Exhibit A-5.11.*

xiv) On February 21, 2014 and on February 26, 2014, Kimberly Kleinhans responded to LEVI MORIN's request for advice about whether he needed to attend the March 2014 setting on the Motion to Enforce/Motion to Enter. Despite the advice provided letting him know how importance his attendance was for the hearing, LEVI MORIN responded on March 25, 2014 that he refused to take off work for the setting, attached hereto and incorporated herein by reference as *Exhibit A-5.12.*

xv) In two emails on February 26, 2014, Kimberly Kleinhans responded to LEVI MORIN's concerns that there were missing June violation dates that needed to be included in the Motion for Enforcement with an explanation on what would be needed to add those dates and support them with evidence in court, attached hereto and incorporated herein by reference as *Exhibit A-5.13.*

xvi) Further, on February 26, 2014, LEVI MORIN forwarded Kimberly Kleinhans 4 emails in which he holds out that he previously provided Kimberly Kleinhans with the June violation dates, and Kimberly Kleinhans responded to each stating the content of the email and showing that there wasn't any reference to June violation dates. LEVI MORIN retaliated by threatening to terminate the attorney-client relationship and Kimberly Kleinhans responded that she would advise LEVI MORIN to do so given that she can not properly represent LEVI MORIN without the child support information she had requested over 7 times, attached hereto and incorporated herein by reference as *Exhibit A-5.14.*

xvii) On February 28, 2014, while waiting for LEVI MORIN to provide alternative counsel information for substitution, Kimberly Kleinhans received a notice of deposition for LEVI MORIN's deposition prior to the March setting and advised LEVI MORIN accordingly that the best next step is to proceed with quashing the deposition, attached hereto and incorporated herein by reference as *Exhibit A-5.15.*

xviii) Likewise, on March 5, 2014, while still waiting for LEVI MORIN to provide alternative counsel information for substitution, Kimberly Kleinhans advised LEVI MORIN that rather than cancel the March setting, it would be in his best interest to proceed with the hearing so that there would not be time prior to the next hearing for LEVI MORIN's deposition, attached hereto and incorporated herein by reference as *Exhibit A-5.15.*

xix) On May 20, 2014, in response to LEVI MORIN's requested changes to the proposed order draft from the March hearing, Kimberly Kleinhans advised LEVI MORIN of the requested changes that the court would not likely accept as requested by LEVI MORIN, but yet still agreed to request agreement from the opposing party, attached hereto and incorporated herein by reference as *Exhibit A-5.16.*

xix) On May 22, 2014 and May 23, 2014, in response to LEVI MORIN receiving advise from Kimberly Kleinhans that he didn't want to hear, LEVI MORIN, for the second time, chose to close the case prior to Kimberly Kleinhans completing the draft of the order and likewise, Kimberly Kleinhans advised LEVI MORIN of the withdraw/substitution process, attached hereto and incorporated herein by reference as *Exhibit A-5.17.*

xx) Finally, June 10, 2014, Kimberly Kleinhans advised LEVI MORIN that a signed Order for the firm's withdraw had been entered and therefore, he represented himself and should contact opposing counsel directly, attached hereto and incorporated herein by reference as *Exhibit A-5.18.*

7. **Email as Morin's Primary Form of Communication:** Furthermore, I attest that LEVI MORIN's primary form of communication with the firm was via email and likewise, confirm that any calls made by LEVI MORIN were documented in his billing invoices (see *Exhibit A-4*) and returned in a timely manner to promptly answer any and all questions that LEVI MORIN had about his case. In fact, , email correspondence generally followed up the calls to verify that LEVI MORIN was clear about the explanation and/or content of the call (See *Exhibits A-5*).

8. **Attorney-Client Fee Contract:** Also attached hereto is a true and correct copy of the attorney fee contract between LEVI MORIN AND LAW OFFICE OF KLEINHANS GRUBER, PLLS that was signed by LEVI MORIN on May 1, 2012, attached hereto and incorporated herein by reference as *Exhibit A-6*. I attest that this contract is a true and correct copy and that LEVI MORIN was provided a copy of the contract on the date that he signed the contract.

9. **Billing:** I am an attorney and one of the managing partners of LAW OFFICE OF KLEINHANS GRUBER, PLLC and I primarily handled or oversaw the handling of LEVI MORIN's family law case. As set forth in LEVI MORIN's attorney fee contract that LEVI MORIN signed on May 1, 2012, I billed at $350.00 an hour, and our associates or of-counsel attorneys were instructed to bill at $225.00 to $250.00 an hour, attached hereto and incorporated herein by reference as *Exhibit A-6* at page 2. The rates were reasonable and necessary given my knowledge of family law and of fees charged for similar services for a case of this type and complexity. My mental impressions and opinions regarding attorney fees and expenses associated with the trial of *this* case and are also based upon my knowledge and understanding of Rule 1.04 of the Texas Rules of Disciplinary which sets forth the following non-exclusive list of factors to be considered in determining the reasonableness of fees charged by attorneys: the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered; the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. I am also familiar with the Supreme Court case of *Arthur Andersen & Co. v Perry Equipment Corporation*, 945 S.W. 2d 812 and other similar cases which discuss the relevant

factors to be considered in determining the reasonableness of attorneys fees. Further, my mental impressions and opinions are based in part on my education and experience as an attorney licensed to practice law in the State of Texas. I graduated from Penn State University with a degree in Criminal Justice in January of 2003 and I graduated from Thomas Cooley Law School in January 2008 and passed the Texas Bar Exam in May of 2008. Additionally, I was admitted into the U.S. District Court of the Western District of Texas in May of 2010. I have been practicing primarily in family law and litigation in Austin, Texas for seven years. I have been billing and clients have been paying the hourly rate of $350.00 an hour for the last three years. I have performed over 100 hearings, bench trials and jury trials in various courts around the state of Texas. I have been named as a Super Lawyer Rising Star for the past two years of 2014 and 2015, of which only 2.5% of attorneys nation-wide are named to the Rising Star list. Additionally, I have been part of the College of the State Bar of Texas and maintained membership since 2012.

10. **Representation**: LAW OFFICE OF KLEINHANS GRUBER, PLLC represented LEVI MORIN from May 1, 2012 to March 15, 2013. On March 15, 2013, LEVI MORIN called LAW OFFICE OF KLEINHANS GRUBER, PLLC and requested that his case be placed on hold and that all work on his case cease. On May 30, 2013 to June 6, 2014, LEVI MORIN called and emailed with Kimberly Kleinhans and requested that work be continued on his case. Likewise, representation continued from May 30, 2013 to June 4, 2014. On June 4, 2014, Kimberly Kleinhans obtained a signed Order of Withdraw from representation and emailed it to LEVI MORIN, attached hereto and incorporated herein by reference as *Exhibit A-4* and *Exhibit A-5*. During this time, based on my review of our practice management system, emails and billing invoices, I can attest that LAW OFFICE OF KLEINHANS GRUBER, PLLC thoroughly answered every question that they understood LEVI MORIN to have.

11. **Siegler**: LAW OFFICE OF KLEINHANS GRUBER, PLLC has never had previous reports that Michael Siegler reported to work drunk or hung-over and has not had any reports since the false allegation of LEVI MORIN stating that Michael Seigler was hung-over at the March 10, 2014 setting. Furthermore, I corresponded with Michael Seigler on the day prior and on the date of the hearing and at no time did he ever appear to be drunk or hung-over. His speak was clear, he was alert and his thoughts were well organized.

12. **No Family Law Specialization**: I do not specialize in family law and have never held out to any client's that I specialize in family law. I understand this to be a special term reserved solely for meaning that one has received a Texas Bar Certification in the area of family law. On August 20, 2014, I emailed LEVI MORIN requesting the subject language (See *LEVI MORIN's Motion To Dismiss Exhibit B*) be removed, however, LEVI MORIN refused and his current Yelp posting still holds out that I claimed to specialize in family law even though LEVI MORIN admits in his December 1, 2014 affidavit that he is aware that "specialized" has a "special meaning," and yet continues to refuse to remove or amend his Yelp posting accordingly (See *LEVI MORIN's Motion To Dismiss Exhibit K*). I would never hold out that I specialize in family law

without being board certified as I know the consequences of doing so could effect my professional license, which is why it concerns me greatly that viewers of LEVI MORIN's post will interpret his posting as being a factual verified offense in which my license is in jeopardy for improperly holding out that I specialized in family law.

13. **Economics:** On average, LAW OFFICE OF KLEINHANS GRUBER, PLLC earns roughly $10,000 per client. This is a conservative average because our personal injury settlements on average range in attorney fees from $30,000 to $3,000 and our family law cases usually average about $10,000. This average is based on my knowledge as the primary partner of the firm that handles all the billing and financials of the firm. Additionally, this number is based on my review of cases and income off of cases. Furthermore, Keith Kleinhans handles the firm's intake calls and retains roughly 40-50% of all calls we get to the firm that are interested in retaining our services. We do not pay for advertisement, we obtain our business from referrals and online traffic, therefore, it is without question that our business has declined since LEVI MORIN's posting. The decline is reflected in our overall business income from the date of the posting to the present and supported by Quickbooks that accounts for all of our firm income, which shows that from July 2013- December 2013, our income was $149,303.03, however for the similar months the following year after LEVI MORIN's June 2014 posting, our income was $96,331.78, which is $52,971.25 lower. Therefore, based on my review of financial documents and client billing, the current Yelp posting (see *Exhibit A-2*) and the Yelp activity reports (see *Exhibit A-3[1]*), minimally, LAW OFFICE OF KLEINHANS GRUBER, PLLC lost income ranging from $52,971.25 to $120,000 depending on method of calculation.

14. **Non-Economics:** For the duration of time, since I have become aware of LEVI MORIN's posting on Yelp, I have been pregnant and the emotions involved in having my reputation as well as the firm's reputation be defamed is overbearing given my already fragile state. Given that one of the areas I handle at the firm is our online presence, the false and damaging statements are extremely stressful and emotionally draining. These allegations have caused me to lose sleep and to overwork myself, rather than getting the needed rest and relaxation recommended by my doctor for a healthy pregnancy. Furthermore, LEVI MORIN's unsolicited derogatory language and disrespectful behavior, further add to the stress and restlessness.

15. **Malice:** LEVI MORIN attempted to file bar complaints against myself and Michael Siegler. Both were immediately dismissed without requiring any response. Although LEVI MORIN claims that he doesn't have a copy of the complaint to verify, it is my

---

[1] Yelp Activity reviews support the same as explained above that of the 193 people that have visited the Yelp site, only 14 have turned into leads, and given the fact that all the other reviews posted on the Yelp page are positive, raving, 5-star reviews, the only conclusion that can be drawn is that LEVI MORIN's Yelp posting is causing the low number of leads generated from the high number of views. My comparison of the Yelp reviews from prior to LEVI MORIN's posting and following LEVI MORIN's posting supports there was a 20% decline in viewers that turned into leads. Therefore, Yelp would have likely generated 25 more leads that it otherwise did with LEVI MORIN's posting. Considering, we retain about 50% of leads, this totals roughly 12 lost clients at an average of $10,000 per client for a total of $120,000.

understanding based on the notification from the State Bar of Texas that I received, that LEVI MORIN received notice that his complaints were dismissed only days or weeks prior to posting his Yelp review. So he knew that his complaints were found by the State Bar of Texas to have no basis, yet he went on to make the same false and baseless claims online to attempt to make it appear as if licenses were in jeopardy when that was not the truth. On February 27, 2015, I went on the State Bar of Texas website and printed the webpage for the public that explains the grievance procedure, and lists "Examples of lawyer conduct that May violate the Disciplinary Rules." Of these examples, LEVI MORIN alludes in his Yelp review that, LAW OFFICE OF KLEINHANS GRUBER, PLLC, "does not return client phone calls, emails, or letters," and states that Michael Siegler, "seems to have a substance abuse problem that affects his/her ability to practice." Given that LEVI MORIN sent me an array of emails stating things like, "You're a horrible person, a predator, and I will make sure that's known on as many fronts as I can," and on two occasions, "go fuck yourself," and "biggest piece of shit lawyer I've ever not met," and "wait ten days and see if I'm as big of a pussy as you," and given the conduct and dishonesty[2] and disrespect that I have seen him display in the course of the 2 years that I represented him, there is no doubt in my mind, his intent to do harm to myself and the firm on as many fronts as is possible. Attached hereto are true and correct copies of the referenced webpage and emails exchanged by Kimberly Kleinhans and LEVI MORIN, attached hereto and incorporated herein by reference as *Exhibit A-7*. I attest that this webpage and emails are true and correct copies.

16. **Costs and Fees Related to Motion to Dismiss**: LAW OFFICE OF KLEINHANS GRUBER, PLLC sought counsel but was unable to obtain counsel in the limited time between the notice of setting and the actual setting on the Motion to Dismiss. LAW OFFICE OF KLEINHANS GRUBER, PLLC further lost profits and incurred nanny expenses during approximate 4 days it took to prepare and defend the Motion to Dismiss claims. Further, LAW OFFICE OF KLEINHANS GRUBER, PLLC incurred the expense of service of the responsive motion. Although, costs and fees exceed the requested amount, LAW OFFICE OF KLEINHANS GRUBER, PLLC requests $2,500 in fees and expenses to reimburse for their losses from this frivolous motion brought only for the purpose of delay.

17. **Lief Olsen's Unreasonable Fees**: LAW OFFICE OF KLEINHANS GRUBER, PLLC objects to the unreasonableness of Leif Olsen's fees for representation of LEVI MORIN, as 1) he charges for travel from Dallas which isn't reasonable given that LEVI MORIN could have hired an attorney from Austin for less expense, and 2) LEVI MORIN is only paying $75 an hour, yet Leif Olsen is inappropriately, requesting the court award him fees at a substantially higher rate ($285), 3) the hours billed are not

---

[2] An example of this dishonesty that can be seen through the email chains attached to this affidavit is that in both the Mediated Settlement Agreement (child support terms requiring him to submit tax returns and paystubs to calculate the amount) that was reached to resolve final trial issues, and the Rule 11 Agreement (exchange/possession issues) that was later reached to resolve enforcement issues ---of both agreements, LEVI MORIN, tried to later get out of terms he had agreed to at time of the agreement.

reasonable for the work performed (ex. 3.3 hours for a simple standard form answer, and 27.6 hours for his Motion to Dismiss), 4) likewise, Leif Olson's fee affidavit fails to state his previous experience in the relevant area of practice to even justify a fee of $285 per hour, which it is likely that he has minimal experience, based on his billable hours alone to get "caught up to speed" on the law surrounding this area of practice. An attorney that regularly practices in defamation law wouldn't have to bill 3.3 hours for a standard answer and 11 hours for research therefore, it is unreasonable that he should be reimbursed at a premium rate for time spent learning the law, 5) Leif Olson's minimal online reputation supports that he is not known as a defamation attorney and holds out himself on a former campaign page that he practices, "primarily in complex commercial disputes, product-liability, probate, deceptive trade practice, and property damage cases." Further, on his State Bar of Texas page, he lists his areas of practice as, "Consumer, Litigation: Commercial, Wills-Trusts-Probate, Appellate: Civil, Appellate: Criminal," again with no reference whatsoever to constitutional law or defamation law., and 6) there is simply not enough information included in Leif Olson's affidavit to determine whether the fees were reasonable and necessary as Leif Olsen fails to provide supporting facts related to the Arthur Anderson factors. Attached hereto are true and correct copies of the referenced web pages I reviewed and printed on February 28, 2015, attached hereto and incorporated herein by reference as *Exhibit A-8*. I attest that the webpage is true and correct and duplicates of pages from the respective websites.

18.    Attached hereto are true and correct copies of emails sent and received between Martin Garza and myself and Michael Siegler and myself, attached hereto and incorporated herein by reference as *Exhibit B and Exhibit C*. I attest that these emails are true and correct and duplicates of emails exchanged.

KIMBERLY G. KLEINHANS

SWORN TO and SUBSCRIBED before me by KIMBERLY KLEINHANS on February 27, 2015.



EMILIE TUCKER
Notary Public, State of Texas
My Commission Expires
January 12, 2019

Emilie Tucker
Notary Public in and for
the State of Texas

**TAB 13**
Morin's Fee Contract at $75/hr.





LEIF A. OLSON

**BOARD CERTIFIED**
Texas Board of Legal Specialization
CIVIL APPELLATE LAW

October 8, 2014

Levi Morin                           *By email to* levimorin@gmail.com
c/o The Directional Drilling
  Company
11390 FM 830
Willis, Texas 77318

Re:   Lawsuit by Kleinhans Gruber PLLC
      Representation agreement

---

Dear Levi:

This letter confirms the terms of my representation of you in the lawsuit that Kleinhans Gruber filed against you. If you agree to these terms, please sign at the bottom of this agreement and return it to me.

## A. Scope of representation.

I will represent you in *Law Office of Kleinhans Gruber PLLC v. Levi Morin*, Case D-1-GN-14-003874 in the 201st District Court of Travis County, which this letter will call "the Lawsuit." The representation will begin once I have received a signed copy of this agreement and you have paid the retainer described in Section C. It will end when the trial court's judgment becomes final.

My representation is limited to the Lawsuit. If you would like me to give you additional legal help or represent you in another problem or dispute, even one involving Kleinhans Gruber, we will need to sign another Representation Agreement covering that dispute.

I have the final authority regarding procedural matters and the scope and content of all communications and correspondence to courts and to other parties about the Lawsuit.

## B. Fees and expenses.

My fee for this representation is $285 per hour. I will defer billing all but $75 per hour of that amount until the end of the representation.

Morin0001